**MYERS & MYERS, INC., et al., Appellants,**

v.

**UNITED STATES POSTAL SERVICE et al., Appellees.**

No. 15, Docket 74–2629.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1975.

Decided Dec. 24, 1975.

John C. Fish, Hinman, Howard & Kattell, Binghamton, N. Y., for appellants.

Neil H. Koslowe, Atty., U. S. Dept. of Justice (Irving Jaffe, Acting Asst. U. S. Atty. Gen., James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., William Kanter, Atty., U. S. Dept. of Justice, on the brief), for appellees.

Before MOORE, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is taken from a judgment dismissing a complaint brought against the United States Postal Service by a former "star route" carrier. A "star route" is a contract awarded by the Postal Service for the transportation of mail between post offices by privately owned truck[1] for a term, in this case, of four years in duration. This suit was

---

1. "Star route" contracts always carried an obligation to deliver the mail with "celerity, certainty and security." These obligations came to be represented by three stars; hence, "star route."

brought by the carrier under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for alleged negligence by the Postal Service in connection with its refusal to renew six star route contracts. The United States District Court for the Northern District of New York, Edmund Port, *Judge*, held that the Postal Service decision as to whether to renew star route contracts is a "discretionary function" within the meaning of 28 U.S.C. § 2680(a) and is therefore excluded from the jurisdiction provided by the Federal Tort Claims Act. No other basis for federal jurisdiction being advanced, the claim was dismissed for lack of subject matter jurisdiction. We affirm in part, reverse in part and remand for further proceedings.

Appellants had been star route contractors in and about Binghamton, New York, for 26 years. Prior to 1973 their contracts were renewed regularly pursuant to what is now 39 U.S.C. § 5005(a)(4), (b)(2).[2] Over this period they accumulated an investment of some $77,000 in the vehicles and equipment involved in the administration of their six star route contracts. These contracts were the sole business of their firm. The last time the contracts were up for renewal was on June 30, 1973. Negotiations for renewal had virtually been completed satisfactorily when appellants were notified out of the blue on May 16 and 17, 1973, that none of the contracts would be renewed. Letters received from the Postal Service on that date stated no reason for the nonrenewal.

Appellants were nevertheless encouraged to bid on the six contracts as they came up and did bid on them all, their bid on two being the lowest made. A month later the low bids submitted by appellants for these two contracts were, however, rejected. The Postal Service at that time informed the appellants as to one rejection that "on information furnished this office you have been considered unresponsible." Another letter, dated June 19, 1973, rejected the other low bid in the following terms:

> We were recently advised, on the basis of certain findings, to cancel your previous contracts. It has been determined, on the basis of these same findings, that you are to be considered a "not responsible" bidder.

After these two contracts were awarded to others, appellants filed a protest with the General Counsel of the Postal Service. His office acknowledged that determining the responsibility of bidders is a discretionary function of the contracting officer, but stated that "when presented with a protest against a determination of nonresponsibility . . . it is our duty to ascertain whether the Contracting Officer's determination was based on substantial information which reasonably supports his findings." The information provided the contracting officer by the postal inspection service was that appellants had entered into a "decidedly illegal" subcontract for part of one route and in connection therewith had filed a "fraudulent" cost statement purporting to show the subcontractor's

---

2. 39 U.S.C. § 5005 provides in pertinent part:

 (a) The Postal Service may obtain mail transportation service—

 . . . . .

 (4) by contract from any person . . . or carrier for surface . . . transportation under such terms and conditions as it deems appropriate, subject to the provisions of this section.

 . . . . .

 (b)(2) A contract under subsection (a)(4) of this section may be renewed at the existing rate by mutual agreement between the contractor or subcontractor and the Postal Service.

The statute regarding renewal "by mutual agreement" was enacted June 19, 1948, as Pub.L. No. 669, 62 Stat. 477. The House Report stated that the purpose of the bill was to eliminate "cutthroat bidding practices," and expressed the viewpoint that "the Postmaster General should approach the problem of letting new contracts or making adjustments in existing contracts based upon changing economic conditions from a viewpoint sympathetic to the existing contract holder." 1948 U.S. Code Cong.Serv. 1864–67 (H.Rep.No.2003).

vehicles as their own. Upon investigation, however, the General Counsel in a lengthy decision dated August 8, 1973, found that the "subcontract" was in fact a valid truck rental agreement that had been fully disclosed to the Service and acquiesced in by it; that the "fraud" was at most an irregularity; and that the contracting officers' determinations of nonresponsibility were not based on substantial evidentiary grounds. The decision went on to say:

> Furthermore, it appears that the procedures followed here effectively denied the protestant the opportunity to defend against the charges of misconduct on which the determinations of nonresponsibility were based and, without benefit of a hearing, apparently have barred it from consideration for star route contract awards for an indeterminate time. . . .

The terms and conditions under which firms and individuals may be debarred or suspended from contracting with the Postal Service are set out in the Postal Contracting Manual, Section 1, Part 6. They provide, among other things, for notice, an opportunity for a hearing, and a limited period of suspension or debarment. Neither suspension nor debarment was invoked in the case of protestant. Consequently, protestant was not accorded that "fundamental fairness" recognized by the court in *Horne Brothers, Inc. v. Melvin R. Laird* [150 U.S.App.D.C. 177, 463 F.2d 1268 (D.C.Cir.1972)]. The end result, in view of the four year term of each of the star route contracts that was readvertised when it expired on June 30, 1973, is that the protestant was debarred, *de facto*, from contracting for star routes for an excessive period.

The result of the General Counsel's decision was that appellants were reinstated as low bidders on the two contracts they had protested, as of November 10,

1973. In this suit they seek damages for failure to renew the other four contracts as well as damages for the period between July 1, 1973, and November 10, 1973, on the protested contracts. Their allegations that they have exhausted their administrative remedies, as is required under 28 U.S.C. § 2675, are not disputed.

The basis of the appellants' claim is that the Postal Service failed to renew the appellants' star route contracts solely because of the Service's wrongful and negligent interpretation of information received by the Service concerning the appellants' truck rental arrangements. The question on this appeal is whether this sort of conduct, admittedly harmful to the appellants' business, is comprehended within the jurisdiction afforded by the Federal Tort Claims Act.

The activities of the Postal Service are expressly made subject to the Tort Claims Act by virtue of 39 U.S.C. § 409(c).[3] The Federal Tort Claims Act provides jurisdiction to the district courts for

> civil actions on claims . . . for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable ·to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). But the Tort Claims Act exempts "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Postal Service contends that the decision to renew star

---

3. 39 U.S.C. § 409(c) states: "The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service."

route contracts is plainly discretionary, since 39 U.S.C. § 5005(b)(2) provides only that such contracts "may" be renewed by "mutual agreement,"[4] a standard which obviously leaves the Service with a wide latitude for decision.

█ We should first note that suit under the Federal Tort Claims Act lies here, if at all, only against the United States. Neither the Postal Service nor the Postal Inspection Service, named as defendants, may be sued directly on claims brought under 28 U.S.C. § 1346(b). Rather, it is expressly provided that

> [t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title . . . .

28 U.S.C. § 2679(a). The Postal Service and Postal Inspection Service seem plainly to be "federal agencies" within the broad definition of that term provided in 28 U.S.C. § 2671 (including "corporations primarily acting as instrumentalities or agencies of the United States"). Cf. Edelman v. Federal Housing Administration, 382 F.2d 594, 596 (2d Cir. 1967).

█ The district court also lacks jurisdiction in respect to the two individual Postal Service employees named as defendants in this action. Only claims "against the United States" are included within the Federal Tort Claims Act jurisdiction. See 28 U.S.C. § 1346(b). No justification for ancillary or diversity jurisdiction has been claimed or argued for by appellants in this case. Accordingly, as to all defendants except the United States, the dismissal of the complaint must be affirmed for lack of subject matter jurisdiction.

As against the United States, however, appellants make three arguments to take the case out of the "discretionary function" exception: (1) appellees were performing "operational level" acts; (2) the gravamen of the complaint is negligent investigation by the Postal Service of appellants' financial situation; (3) appellants were entitled to notice and an opportunity to be heard under Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), before their contracts were not renewed. We will consider each of these arguments below.

█ I. *Operational Level Acts.* While appellants argue that the awarding of contracts here was on an "operational level," as opposed to a discretionary one, Hendry v. United States, 418 F.2d 774, 782–83 (2d Cir. 1969), the award of Government contracts is generally held to involve the exercise of a discretionary function. See Scanwell Laboratories, Inc. v. Thomas, 521 F.2d 941, 948 (D.Cir.1975); Gowdy v. United States, 412 F.2d 525, 529 (6th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969); Lipka v. United States, 249 F.Supp. 113 (N.D.N.Y.1965), aff'd on other grounds, 369 F.2d 288 (2d Cir. 1966), cert. denied, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967). "Where there is room for policy judgment and decision there is discretion," the leading case tells us. Dalehite v. United States, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). See also H.R.Rep.No.1287, 79th Cong. 1st Sess. 5–6 (1945). Determining whether or not to renew star route contracts involves a number of policy factors, including the contractor's past performance, the nature of the routes, the needs of postal users, and, under 39 U.S.C. § 5005(c), due consideration of what "best serves the public interest,"[5] and the cost of the transportation service. That a mistaken assumption of the facts was relied upon in the Postal Service choice of contractor

---

4. See note 2 *supra*.

5. 39 U.S.C. § 5005(c), provides:

> The Postal Service, in determining whether to obtain transportation of mail by carrier or person under subsection (a)(1) of this section, by contract under subsection (a)(4) of this section, or by Government motor vehicle, shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode.

here does not make the choice any the less discretionary. While the legislative history of 39 U.S.C. § 5005(a)(4), (b)(2), indicates that the statute was enacted to give star route contractors a measure of security, *see* note 2 *supra*, the language is precatory only; it does not call for automatic renewal in disregard of all other considerations.

II. *Negligent Investigation.* A more persuasive claim for the appellants is that the Postal Service's decision was based on "negligent investigation" of the facts surrounding the contract renewal decision, and that this negligence does not concern the discretionary contract award decision and therefore states a proper ground for relief under the Tort Claims Act. Appellants apparently analogize this investigation to the medical examinations in *Hendry v. United States, supra,* where negligence in an examination administered as a prelude to licensing and certification of the plaintiff as fit for sea duty was held to state a ground for relief. The Postal Service argues that even if there were negligence in the Postal Service investigation resulting in the decision not to renew the appellants' contracts, the gist of the action is tortious interference with contractual rights, and that such claims are barred specifically under 28 U.S.C. § 2680(h).[6] *See Edelman v. Federal Housing Administration, supra,* 382 F.2d at 596.

■ There is a superficial plausibility to the Government's position. But we need not determine which of the parties' views is the more reasonable because we believe a third characterization most accurately describes this aspect of appellants' claim. We view the complaint as stating that the Postal Service has abused its discretion and has acted arbitrarily and with insufficient and errone-ous evidence in its contract renewal actions. Thus viewed, the action complained of still falls within the § 2680(a) exception from jurisdiction where negligence in the performance of a discretionary function is alleged. *Scanwell Laboratories, Inc. v. Thomas, supra; Coastwise Packet Co. v. United States,* 398 F.2d 77 (1st Cir.), *cert. denied,* 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (1968) (negligent delay in certifying a schooner for passenger trade did not give cause of action where issuance of certificate discretionary); *Smith v. United States,* 375 F.2d 243 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) (allegedly negligent or wrongful failure to prosecute not actionable as discretionary); *United States v. Morrell,* 331 F.2d 498 (10th Cir.), *cert. denied sub nom. Chournos v. United States,* 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964) (discretionary granting of grazing permits on federal lands not actionable although federal officials knew stock would stay on intermingled lands of plaintiffs). As stated by Congress in adopting the discretionary function exemptions:

> To take another example, claims based upon an allegedly negligent exercise by the Treasury Department of the blacklisting or freezing powers are also intended to be excepted. The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion. Nor is it desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.

H.R.Rep.No.1287, 79th Cong., 1st Sess. 6 (1945).

III. *Right to Hearing.* Appellants' third argument is that *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3

---

**6.** 28 U.S.C. § 2680 states that:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

. . . . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . .

L.Ed.2d 1377 (1959), requires that they should have been given notice and a hearing before contract renewals were denied, that failure to grant such a hearing was a "wrongful act or omission" by the Postal Service, and that they are therefore entitled to compensation under 28 U.S.C. § 1346(b). Every step of this argument merits our serious consideration.

A. *Requirement of Notice and a Hearing. Greene v. McElroy* involved a man who lost his job with a private contractor because the Defense Department refused to clear him for access to classified documents. The justification which the Defense Department gave for refusing his clearance included the assertion that Greene was sympathetic toward communism and the Soviet Union. This assertion, especially in the McCarthy era, obviously seriously interfered with Greene's ability to find employment with defense-related industries. It had the further effect of foreclosing Greene from the practice of his chosen profession as an aeronautical engineer. In this context, where the governmental action effected a serious detriment to the petitioner's economic liberty, the Supreme Court ruled that the safeguards of due process applied to allow Greene to test fully the validity of the underlying facts put forth as justification for the Defense Department action. This decision may be compared with the Supreme Court's later opinion in *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). *See* Judge Friendly's *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1267, 1273 (1975). There a cook at a naval facility was barred from the facility by order of the commanding officer. The Court decided that the Due Process clause did not apply because the cook's freedom in practicing her profession was not infringed by this action. In its view, "[a]ll that was denied her was the opportunity to work at one isolated and specific military installation." 367 U.S. at 896, 81 S.Ct. at 1749. Where the government action does not "bestow a badge of disloyalty or infamy" nor foreclose "other employment opportunity," *id.* at 898, 81 S.Ct. at 1750, there is no deprivation of "liberty" which invokes the procedural safeguards of the Due Process clause. *Cf.* Friendly, *supra*, at 1278.

Refusing to renew a particular contract or set of contracts does not, of itself, foreclose other contracting opportunities with the Postal Service, with other governmental agencies or with the private business community. A star route contractor cannot be said to hold a statutory entitlement to contract renewals, *Gonzalez v. Freeman*, 118 U.S.App. D.C. 180, 334 F.2d 570, 574 (1964), or even a reasonable expectation that his business relationship with the Postal Service has become permanent in nature. *See Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.*, 506 F.2d 467 (9th Cir. 1974). *Cf. Arnett v. Kennedy*, 416 U.S. 134, 151, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In fact, the clear intent of the statute was to maintain flexibility for the Postal Service in such arrangements by making the renewal decision a discretionary matter. *See* 39 U.S.C. §§ 5005(b)(2), 5005(c); notes 2 & 5 *supra*.

■ It is, therefore, true that the Postal Service is free to refuse to renew any particular star route contract without first granting a hearing. But this does not mean that these appellants were disentitled to a hearing. They have alleged facts which indicate that the Postal Service refusals to renew the star route contracts in their case were part of a "sanction" taken against them for claimed irregularities in their firm's operating procedures. In the words of the Postal Service General Counsel, "The end result . . . is that the [appellants were] debarred, *de facto* from contracting for star routes for an excessive period." Where a federal agency takes action to debar a private firm from further business relations with that agency,

the effect is far different from that of simply denying an application for a contract.

Disqualification from bidding or contracting . . . directs the power and prestige of government at a particular person and . . . may have a serious economic impact on that person. . . . The governmental power must be exercised in accordance with accepted basic legal norms. Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made.

*Gonzalez v. Freeman, supra,* 334 F.2d at 578. Denial of notice and hearing before debarment would "give rise to serious constitutional issues," *id.* at 579, the very same concerns, to which we have referred above, expressed in *Greene v. McElroy.*

The Postal Service has anticipated the constitutional requirement suggested in *Gonzalez* by adopting regulations concerning "Rules of Practice in Proceedings Relative to Debarment and Suspension from Contracting." 39 C.F.R. § 957 (1974). These rules require that before debarment action be taken by the Service the contractor be given a written notice of the proposed action which contains a statement of the reasons for the proposed action, the proposed effective date and duration of same, and a notice that a hearing on the debarment action may be obtained if requested within 20

days. *Id.* § 957.4. The debarment action cannot become effective until after the hearing is held. *Id.* § 957.4(b)(4). At the hearing the contractor has the right to present evidence, to rebut and cross-examine opposing witnesses, and to have a decision based upon the record rendered by a neutral hearing examiner. *Id.* §§ 957.13–.25.

■ Under the Postal Service regulations, appellants had a right to procedural safeguards before the Service debarred their firm, *de jure* or *de facto,* from future consideration as an applicant for star route contracts. The fact that the Service did not label its action as a "debarment" is inconsequential, for the Service cannot bypass these important procedural safeguards merely by omitting the formal label to the sanction applied. A debarment is "an exclusion from Government contracting . . . for a reasonable, specified period of time commensurate with the seriousness of the [grounds for sanction]." *Id.* § 957.-3(d). The action taken by the Postal Service in this case appears on its face to have resulted in exactly this substantive effect upon appellants, but without the procedural safeguards which must be applied. *See Horne Brothers, Inc. v. Laird,* 150 U.S.App.D.C. 177, 463 F.2d 1268, 1271 (1972) (concluding that "an action that 'suspends' a contractor and contemplates that he may dangle in suspension for a period of one year or more, is such as to require the Government to insure fundamental fairness to the contractor whose economic life may depend on his ability to bid on government contracts").[7] Since the record we have from the district court does not reveal,

---

7. The Postal Service may argue that, rather than debarment, the action it has taken against appellants is a "suspension," which is defined as a "disqualification from Government contracting . . . for a temporary period of time because a concern . . . is suspected upon adequate evidence of engaging in criminal, fraudulent, or seriously improper conduct." 39 C.F.R. § 957.3(e) (1974). The Postal Service regulations, apparently viewing a "suspension" as a milder sanction than debarment, do not make provision for a hearing

prior to invoking the "suspension." *But see Horne Bros., Inc. v. Laird,* 150 U.S.App.D.C. 177, 463 F.2d 1268 (1972). Rather, the person suspended may appeal the action and petition for a hearing, which is granted only at the discretion of the Service. *See* 39 C.F.R. § 957.27(b) (1974).

Whether such an argument is possible on the evidence, or whether the Postal Service is estopped from advancing it and the consequences that flow from it are matters for the district court on remand.

except by way of the General Counsel's statement, whether the Postal Service action in this case was, in effect, a debarment or something less, note 7 *supra*, it will be necessary to remand for purposes of determination of this point on the basis of the evidence. Construing the complaint at this stage most favorably to appellants, as, of course, we must, we consider their allegations to constitute a claim that they were denied renewal of their star route contracts as a result of debarment action taken by the Postal Service without notice or a hearing for appellants, that this was a "wrongful act or omission" by the Postal Service, and that they are therefore entitled to damages under 28 U.S.C. § 1346(b). We now turn to the second step in appellants' argument.

 B. *Refusal to Grant a Hearing as a "Wrongful Act."* The Federal Tort Claims Act grants jurisdiction to the district courts for claims against the United States for injury "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be *liable to the claimant in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis added). Only if the laws of the state in which the alleged wrongful act occurred provide recovery in similar situations involving private parties does the Tort Claims Act take effect. *See, e. g., Richards v. United States*, 369 U.S. 1, 6–7, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Klein v. United States*, 339 F.2d 512 (2d Cir. 1964); *O'Neil v. United States*, 92

U.S.App.D.C. 96, 202 F.2d 366 (1953). Thus, a question which is prerequisite to jurisdiction is whether the laws of the locus of this action would provide for recovery where a firm is blacklisted or debarred from contracting without being provided an opportunity to appear and challenge the reasons for that action.

Somewhat surprisingly, this issue has not been briefed by either party to this action. We cannot, on the face of the pleadings, ascertain with absolute certainly whether the alleged wrongful conduct took place in New York or Washington, D. C., so as readily to make the choice of state law under *Richards v. United States, supra.* We do not, however, at this point, consider by any means frivolous the appellants' argument that blacklisting without a hearing is tortious conduct. While apparently what occurred here is *de facto* debarment, *de jure* debarment by the Postal Service would result in the contractor's being placed on what amounts to a federal blacklist, one including all firms debarred or suspended by any government agency or department, 39 C.F.R. § 956.-3(c) (1974). Such blacklisting has the effect of preventing listed contractors from obtaining government work in all but the most unusual cases. *See id.* §§ 956.3(d), 956.4. Other consequences having an adverse impact upon appellants' business relations with others may also have ensued from the debarment. Accordingly, appellants may well be able to show the Postal Service action here was a "wrongful act" constituting the tort of interference with business opportunity or prospective advantage.[8] *See* 1

---

8. We need not decide here whether the exception in 28 U.S.C. § 2680(h) for actions based on "interference with contract rights" extends to prevent actions based on interference with prospective contractual relations or with business opportunity. *See Nicholson v. United States*, 177 F.2d 768, 769 (5th Cir. 1949); *Hendry v. United States*, 280 F.Supp. 27, 33 (S.D. N.Y.1968), *aff'd*, 418 F.2d 774, 779 (2d Cir. 1969). *See* 1 F. Harper & F. James, The Law of Torts § 6.11, at 510 (1956):

Although the law does not extend its protection as far in the case of precontractual interferences as it does when existing con-

tracts have been interfered with, it draws a line beyond which no member of the community may go in interrupting contractual negotiations or otherwise intentionally intermeddling with the business affairs of others. The interest protected is different here than that considered in the preceding sections. Instead of the interest in the security of contracts already made, it is the interest in reasonable expectations of economic advantage. This, of course, involves society's interest in affording to the individual a fair opportunity to conduct his legitimate business affairs without interruption from others

F. Harper & F. James, The Law of Torts § 6.11 (1956); W. Prosser, Handbook of the Law of Torts § 130 (4th ed. 1971); *Temperton v. Russell* [1893] 1 Q.B. 715; *Jersey City Printing Co. v. Cassidy*, 63 N.J.Eq. 759, 765, 53 A. 230, 234 (1902); *Tuttle v. Buck*, 107 Minn. 145, 119 N.W. 946 (1909).

It is also possible that the failure of the Postal Service to comply with its own regulations, or with constitutional requirements, to provide a hearing before taking action constituting debarment may be treated under state law as negligence per se. In cases where a law is designed for the protection of a given class of persons, and its violation results in injury to a member of that class, at least some states will find that the statutory violation is evidence of a breach of a duty of care, even if not negligence per se. *See* W. Prosser, supra, § 36, at 200. We cannot readily conclude that appellants have failed to raise a claim which may be cognizable under state law. Therefore, we leave this matter for further consideration by the district court upon remand. However, even if appellants can show a violation of a duty for which the applicable state law would provide recovery, they have not necessarily established the third leg of their argument, which is that they would therefore be entitled to compensation under 28 U.S.C. § 1346(b). They must still reckon with the exceptions from § 1346 (b) jurisdiction in 28 U.S.C. § 2680, and especially in § 2680(a).

C. *Exceptions for "Discretionary Functions" and for Acts in Execution of a Statute.* The Government renews its argument that the "discretionary function" exception applies. But here the appellants' argument is that the Postal Service has acted in contravention of its own regulations, if not unconstitutionally, in denying appellants a hearing prior to debarment from government contracting. It is, of course, a tautology that a federal official cannot have discretion to

except in so far as such interferences are sanctioned by the "rules of the game" which society has adopted.

behave unconstitutionally or outside the scope of his delegated authority. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170–71, 2 L.Ed. 60 (1803); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Century Arms, Inc. v. Kennedy*, 323 F.Supp. 1002, 1005 (D.Vt.), *aff'd*, 449 F.2d 1306 (2d Cir. 1971), *cert. denied*, 405 U.S. 1065, 92 S.Ct. 1494, 31 L.Ed.2d 794 (1972). This distinguishes cases such as *Scanwell Laboratories, Inc. v. Thomas*, *supra*, and *United States v. Morrell*, *supra*, which hold that even though discretion is abused, its exercise cannot give rise to a federal tort claim. *See* 28 U.S.C. § 2680(a). For here the appellants' claim is that the Postal Service lacked discretion to act in disregard of its own applicable regulations and of the Constitution. *See Larson v. Domestic & Foreign Commmerce Corp.*, *supra*; *Hatahley v. United States*, 351 U.S. 173, 181, 76 S.Ct. 745, 100 L.Ed. 1065 (1956).

There is another jurisdictional exception in 28 U.S.C. § 2680(a) which, however, we must consider. That is the provision excepting "[a]ny claim based upon an act or omission of an employee of the Government, *exercising due care*, in the execution of a statute or regulation, *whether or not such statute or regulation be valid* . . . ." (Emphasis added.) This exception is part of the statutory scheme which is intended to assure that "the legality of a rule or regulation should [not] be tested through the medium of a damage suit for tort." H.R.Rep.No.1287, *supra*, at 6. *See also Dalehite v. United States*, *supra*, 346 U.S. at 33, 73 S.Ct. 956.

This exception clearly has no effect on appellants' claim regarding fundamental procedural errors made in the alleged debarment of appellants—for, assuming the validity of the Postal Service debarment regulations, the Service was not acting "in the execution of" its regulations by ignoring them. Another way of stating the same thing is that the Serv-

This is an issue the district will undoubtedly wish to consider upon remand.

ice was not "exercising due care" in its execution of those regulations. The meaning of the words "exercising due care" in § 2680(a) has been given content by the Supreme Court in *Hatahley v. United States, supra.* That case explained that "due care" in the execution of a federal law "implies at least some minimal concern for the rights of others." 351 U.S. at 181, 76 S.Ct. at 752. Subjective indication of such concern on the part of the Postal Service is wholly lacking at this stage of the case. Rather, the Service's alleged failure to adhere to its established procedures is indicative of a lapse of care on its part in the discharge of its statutory authority. *Dupree v. United States,* 247 F.2d 819, 824–25 (3d Cir. 1957).

The district court on remand will need to determine whether the Postal Service has denied star route contracts to appellants as a result of debarring appellants without a prior hearing; whether a prior hearing was required by either the Constitution or the Postal Service regulations; and whether failure to give a prior hearing in this case constitutes a "wrongful act" or negligence per se for which recovery may be had.

We affirm the judgment of the district court in its dismissal of this action against all defendants except the United States. We reverse the judgment dismissing the United States as a defendant, and remand for further proceedings in accordance with this opinion.