Paul A. BOSCO, Individually and Paul
A. Bosco & Sons Contracting
Corporation, Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS,
FORT WORTH DISTRICT, et
al., Defendants.

Civ. A. No. 3–84–1459–H.

United States District Court,
N.D. Texas,
Dallas Division.

April 9, 1985.

the passage of the Article 29(1) dates could be     "concealed"—fraudulently or otherwise.

450

Lee C. Davis, Griffin Cochrane & Marshall, Atlanta, Ga., Marc R. Stanley, Strasburger & Price, Dallas, Tex., for plaintiffs.

Charles Ory, Asst. U.S. Atty., Dallas, Tex., Rupert M. Mitsch, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are the following pleadings:

Defendants' Motion to Dismiss and Memorandum in Support, filed December 11, 1984;

Plaintiffs' Memorandum in Opposition, filed January 22, 1985;

Defendants' Reply to Plaintiffs' Opposition, filed February 12, 1985;

Plaintiffs' Response to Defendants' Reply, filed March 4, 1985;

Defendants' Supplement to Motion to Dismiss, filed March 13, 1985;

Defendants' Motion to Dismiss, and Memorandum in Support (Amended Complaint), filed February 12, 1985;

Plaintiffs' Memorandum in Opposition (Amended Complaint), filed March 4, 1985.

## Factual Background

The current dispute between the parties has its roots in the solicitation and award of the Lakeview Lake Embankment Project in Mountain Creek, Texas. When bids were opened by the United States Army Corps of Engineers ("Corps") on August 12, 1981, John Carlo, Inc. ("Carlo") was determined to be the low bidder. During the pre-award survey, the Corps discovered that Carlo anticipated using Paul A. Bosco & Sons Contracting Corporation as a subcontractor on the project. Based on information gathered in the survey, the contracting officer concluded that the subcontractor lacked a satisfactory record of integrity.[1] The contracting officer considered Carlo's association with Bosco and Paul A. Bosco & Sons Contracting Corporation (hereinafter collectively referred to as "Bosco") and decided he could not make an affirmative determination of contractor responsibility, as required by law.[2] As a result, the contract for the project was awarded to the second low bidder.

Bosco filed a Complaint against the Corps, claiming *de facto* debarment, tortious interference with business relations and violations of procedural due process. *Paul A. Bosco & Sons Contracting Corporation and Paul A. Bosco v. The United States Army Corps of Engineers, Fort Worth Division and the Secretary of the United States Army,* No. 3–82–0457–H (N.D.Tex. filed March 24, 1982) (hereinafter "Bosco I"). By Memorandum Opinion and Order, filed April 27, 1983, this Court dismissed, without prejudice, Bosco's contract and tort claims, leaving only the claims seeking declaratory and injunctive relief for the alleged due process violations.

Bosco pursued its tort claims by filing an administrative claim with the Corps on September 15, 1983. *See* Amended Complaint, Exhibit A. The claim was denied on February 29, 1984. On May 22, 1984, the parties settled Bosco I. The settlement agreement included assurances that Bosco would be permitted to bid on government construction projects. *See* Defendants' Memorandum in Support, Exhibit 3.

On August 29, 1984, Bosco filed this action based on its administrative claim. The Original Complaint alleged damages resulting from

(1) denial of due process under the Fifth Amendment of the United States Constitution (Counts I and II);

(2) *de facto* debarment (Count III);

(3) libel and slander (Count IV);

(4) tortious interference with business relations (Count V).

In response to Defendants' Motion to Dismiss, Plaintiffs amended their Complaint to add the tort of false light invasion of privacy (Count VI). Plaintiffs claim two million dollars of damages relating to the Carlo contract and an additional five million dollars relating to other government and private contracts lost "as a result of Defendants' determination that Bosco 'lacked integrity'". Amended Complaint, at 9, 10.

In their Motions to Dismiss, Defendants urge dismissal of Plaintiffs' Complaint pur-

---

**1.** The determination by the Corps that Bosco lacked integrity was based primarily upon a report authored by the Nashville Division of the Corps. The report was a summary of an internal agency investigation and contained details of a criminal investigation against Bosco. The report also included an evaluation of Bosco's performance on the Tennessee-Tombigee Waterway project. Defendants' Memorandum in Support, at 3.

**2.** The Defense Acquisition Regulations ("DAR") require that "[p]urchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only.... The contracting officer shall make a determination of nonresponsibility if, after compliance with 1–905 and 1–906, the information thus obtained does not indicate clearly that the prospective contractor is responsible." DAR 1–902 (1976 ed.). For full text of DAR 1–902, *see infra* note 9.

suant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Defendants argue that the waiver of sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (hereinafter "FTCA"), is limited by the express provisions of the statute. Defendants maintain that Plaintiffs' Complaint must fail because it contains claims expressly excluded by the statute or which are not cognizable under the law of the state of Texas.

### *The Section 2680(h) Exceptions*

The United States District Court is given jurisdiction of tort claims for money damages against the federal government in 28 U.S.C. § 1346(b), which provides:

> ... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The FTCA defines the tort liability of the United States as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

While this waiver of sovereign immunity is couched in broad terms, Congress explicitly preserved the immunity of the United States in several areas. Defendants focus on the exception appearing in 28 U.S.C. § 2680(h) which precludes recovery against the United States for various intentional torts, including "[a]ny claim arising out of ... libel, slander, ... or interference with contract rights." Defendants argue that Plaintiffs' claims for libel, slander, false light invasion of privacy and tortious interference with business relations are barred by section 2680(h).

■ Certainly Plaintiffs' libel and slander claims fall squarely within the exceptions in subsection (h) and must be dismissed.[3] The question upon which the Court must focus is whether the language of 2680(h) encompasses the claims of false light invasion of privacy and tortious interference with business relations.

■ In construing the provisions of the FTCA, the Court is guided by the general principle that the United States may be liable for the torts of its employees only where there has been a "clear relinquishment of sovereign immunity". *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). As stated more recently by the United States Supreme Court, "the proper objective of a court attempting to construe one of the subsections of 2680 is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more". *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (1984) (*quoting Dalehite,* 346 U.S. at 31, 73 S.Ct. at 965). Clearly, the Court's inquiry must extend beyond a superficial review of the pleadings before the Court. *United States v. Neustadt,* 366 U.S. 696, 703, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961).

■ In their Amended Complaint, Plaintiffs allege that they were determined by Defendants to lack integrity on the basis of a report that is "derogatory" because of its allegations which "tend to stigmatize both

---

**3.** Even a cursory reading of the statute should have made it equally clear to the Plaintiffs that this Court is without jurisdiction to hear any claims against the United States arising from libel or slander. Indeed, in their Memorandum in Opposition to Defendants' Motion to Dismiss, filed simultaneously with a Motion to Amend, Plaintiffs conclude that "aside from libel and slander, Plaintiffs' causes are not excepted by § 2680(h)." Memorandum, at 20. Having noted the exclusion, Plaintiffs persisted in maintaining libel and slander claims in their Amended Complaint. *See* Amended Complaint, Count IV.

Bosco and Bosco Corp." Amended Complaint, at 5. Plaintiffs assert that Defendants informed the news media of their determination, and that, as a result, Plaintiffs "have been saddled with the stigma of a contractor who 'lacks integrity' in the construction industry ...." *Id.* at 7, 8. The Administrative Claim filed by Bosco Corporation states that "[t]he Corps has thus used the report to besmirch Bosco's reputation" and concludes that "the Corps' actions have ruined Bosco's reputation ...." *Id.*, Exhibit A, at 3, 5. It is clear from such allegations that the gravamen of Plaintiffs' complaint is injury to reputation which is the interest protected by the law of defamation. *See* Restatement (Second) of Torts § 558 (1979).

While it is true that false light invasion of privacy is a distinct tort from libel or slander, the Court notes that Plaintiffs' Complaint was amended to add the theory only after Defendants' Motion to Dismiss the libel and slander claims.[4] Indeed, Plaintiffs' Memorandum in Support of Motion for Leave to File Amended Complaint states that "plaintiffs believe that the amended complaint will more adequately respond to Defendants' Motion to Dismiss and will more accurately present to the Court the controversy between the parties." Memorandum, at 1. While Plaintiffs maintained that their "original complaint does not accurately reflect Plaintiffs' claims", the general allegations in Paragraphs 7 through 39, which provide the basis for the claims, are identical in both the Original and Amended Complaints.

The Court cannot permit the obvious attempt by Plaintiffs to circumvent the bar of 2680(h) by merely relabeling the theory

upon which they seek recovery. *Hernandez v. United States*, 465 F.Supp. 1071 (D.C.Kan.1979). As stated by one court, "[i]n determining the applicability of the § 2680(h) exception a court must look not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts". *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir.1976). *See also Johnson v. United States*, 547 F.2d 688, 691 (D.C.Cir. 1976); *Blitz v. Boog*, 328 F.2d 596, 598 (2d Cir.1964), *cert. denied*, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964). The substance of Plaintiffs' complaint here is defamation which is barred under the FTCA.[5]

■ Defendants also argue that the claim of tortious interference with business relations is barred, since it arises from an alleged interference with contract rights. Plaintiffs respond that, under Texas law, they have alleged a tort distinct from that barred by the FTCA. It is true that Texas law recognizes a cause of action for tortious interference with business relations even in the absence of a contract. *Martin v. Phillips Petroleum Co.*, 455 S.W.2d 429, 435 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). The distinction is one "without a difference", however, for purposes of the FTCA exceptions.[6]

Plaintiffs allege that Defendants have interfered with their business relations with third parties. Such an alleged breach of duty is the same as that resulting from an interference with contract rights. As described in the Restatement, "[t]here is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether

---

**4.** *See, e.g., Wood v. Hustler Magazine*, 736 F.2d 1084, 1087 (5th Cir.1984) (Texas law recognizes cause of action for invasion of privacy). The *Wood* court also noted, however, that the principal element of injury in a defamation action is damage to reputation while a privacy action is founded on mental anguish. *Id.*

**5.** The Court notes the holdings in other cases that 2680(h) does not preclude a cause of action against the United States for invasion of privacy. *See Birnbaum v. United States*, 588 F.2d 319, 328 (2d Cir.1978); *Black v. Sheraton Corp.*,

564 F.2d 531, 539–41 (D.C.Cir.1977). The Court does not take issue with those cases, but merely concludes that the specific allegations raised by Plaintiffs here arise from libel and slander rather than an invasion of privacy.

**6.** *See, e.g., C.F. & I. Steel Corp. v. Peter Sublett and Co.*, 623 S.W.2d 709, 715 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.) (recognizing the similarities between interference with a business relationship and contract interference).

or not they are secured by contract, unless the interference is not improper under the circumstances". Restatement (Second) of Torts § 766 comment 6.

The construction proposed by Plaintiffs subjects the United States to liability for the speculative claim of interference with potential contracts while precluding recovery for the more tangible claim of interference with existing contracts. The Court declines to adopt such an illogical construction. *See Art-Metal U.S.A., Inc. v. United States of America,* 753 F.2d 1151, 1154, 1155 (D.C.Cir.1985) (courts have consistently held that claims for interference with prospective advantage barred as claims arising out of interference with contract rights) and cases cited at n. 5 of the slip opinion. Count V of Plaintiffs' Complaint must therefore be dismissed.

### De facto Debarment

Defendants argue that Plaintiffs' debarment claim must also be dismissed for failure to state a claim for relief. Fed.R.Civ.P. 12(b)(6). Defendants support their argument on the basis of the limitation in the FTCA that the liability of the United States exists only "in the same manner and to the same extent as a private individual under like circumstances". 28 U.S.C. § 2674. The "manner and extent" of liability is to be determined "in accordance with the law of the place where the act or omission occurred". 28 U.S.C. § 1346(b). It is undisputed that Texas law governs.

▉▉▉▉▉ Plaintiffs propose that "[t]he fact that Texas courts have not ruled, in a published opinion, on debarment as a tort under state law is not fatal to plaintiffs' cause of action under the FTCA, based on the Corps' debarment of plaintiffs in violation of applicable regulations." Memorandum in Opposition, at 8. Plaintiffs argue

***

7. The regulation allegedly breached by the Corps is DAR 1–605.3 which requires notice and an opportunity to be heard prior to debarment.

8. *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir.1975) lacks the precedential value proposed by Plaintiffs. In remanding the case for further proceedings, the

***

that it is sufficient to identify an analogous form of liability which is recognized under state law. Since Texas law permits tort recovery under a negligence per se theory where a statutory or regulatory provision is violated, Plaintiffs reason that Defendants' failure to follow regulations constitute a cause of action under the FTCA.[7]

The Court is not persuaded by Plaintiffs' reasoning. It is clear that the violation of a federal statute or regulation by a federal employee does not in and of itself create a cause of action under the FTCA. *See United States v. Smith,* 324 F.2d 622, 624, 625 (5th Cir.1963) (FTCA not applicable where claimed negligence arises out of failure of United States to carry out a statutory duty in the conduct of its own affairs, in view of section 1346(b) language). As explained by the *Smith* court, "[t]his is so because it is impossible to equate the relationship of the parties in such a situation to any state law relationship where the person sought to be bound is a 'private person' who would be liable to the claimant in accordance with the law of the state". *Id.* at 625. Since Plaintiffs have failed to demonstrate that Texas law recognizes a tort action for *de facto* debarment, Plaintiffs' allegations fail to state a cause of action cognizable under the FTCA. *See Dugan v. United States,* No. 81–1635, slip op. (E.D.Pa. Nov. 19, 1982), *aff'd without opinion,* 722 F.2d 731 (3d Cir.1983) (where no cause of action recognized for debarment without opportunity to be heard under Pennsylvania law, United States immune under FTCA).[8]

▉▉▉▉▉ Plaintiffs assert that "[e]ven if the Government has not waived immunity for claims of libel, slander, and interference with contract, it is plain that the corps, by depriving plaintiffs of process, has injured a recognized liberty interest." Memoran-

***

*Myers* court merely suggested that "[i]t is also possible that the failure of the Postal Service to comply with its own regulations, or with constitutional requirements, to provide a hearing before taking action constituting debarment may be treated under state law as negligence per se." *Id.* at 1261.

dum in Opposition, at 11. Such an argument is of no avail, since constitutional torts are outside the purview of the FTCA. *Brown v. United States*, 653 F.2d 196, 201 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982) citing *Birnbaum v. United States*, 588 F.2d 319, 327 (2d. Cir.1978) ("We do not believe that the Federal Tort Claims Act comprehends federal constitutional torts in its reference to the 'law of the place' under § 1346(b)."). Since the Fifth Amendment rights asserted by Plaintiffs are guaranteed under federal law, not local law, the violations alleged are not remedial under the FTCA. *See Art-Metal*, at 1160 ("FTCA's local law requirement may not be circumvented merely by casting alleged constitutional wrong as negligence".)

### The Discretionary Function Exception

Finally the Court also finds merit in Defendants' argument that the actions of which Plaintiffs complain fall within the scope of the discretionary function exception. The exception appears in section 2680(a) and preserves the sovereign immunity of the federal government with respect to "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the exception is to shield essential governmental decisionmaking from disruptive and unreasonable challenges in the courts. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

As elaborated upon by the *Dalehite* court, the exception encompasses "more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications, or schedules of operations. Where there is room for policy judgment and decision there is discretion". *Id.* at 35, 36, 73 S.Ct. at 968.

The Supreme Court's most recent effort to delineate the reach of the discretionary function exception focuses on the conduct being challenged. *United States v. S.A. Empresa de Viacao Area Rio Grandense* ("VARIG"), — U.S. —, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In *VARIG*, the Court stated that "the basic inquiry ... is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability ... [to avoid] judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 2675. This Court is persuaded that Plaintiffs' complaint regarding Defendants' contract procurement process involves the type of activity shielded by section 2680(a). *See Scanwell Laboratories v. Thomas*, 521 F.2d 941, 948 (D.C.Cir. 1975) (discretionary function applies where contracting officer's obligation not purely ministerial, notwithstanding possible abuse of discretion in ignoring bidding regulations).

As stated earlier, the Corps was required to make a determination whether or not Carlo was a responsible contractor. *See* DAR 1–904.1.[9] In making his determina-

---

**9.** DAR 1–902, General Policy, elaborates on the meaning of "responsible":

> Purchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only. A responsible prospective contractor is one which meets the standards set forth in 1–903.1 and 1–903.2, and such special standards as may be prescribed in accordance with 1–903.3 and by overseas commanders. The award of a contract to a supplier based on lowest evaluated price alone can be false economy if there is subsequent default, late deliveries, or other unsatis-

factory performance resulting in additional procurement or administrative costs. While it is important that Government purchases be made at the lowest price, this does not require an award to a supplier solely because he submits the lowest bid or offer. A prospective contractor must demonstrate affirmatively his responsibility, including, when necessary, that of his proposed subcontractors. The contracting officer shall make a determination of nonresponsibility if, after compliance with 1–905 and 1–906, the information thus obtained

tion of responsibility, the contracting officer must consider the records of any concerns who may influence the bidder's performance, including subcontractors. *See* DAR 1–906.[10] Based on the information gathered in the pre-award survey, the contracting officer determined Bosco lacked a satisfactory record of integrity which was imputed to Carlo. *See* Memorandum Opinion and Order, filed April 27, 1983, in Bosco I.

Certainly the federal actions challenged by Plaintiffs required the exercise of judgment and discretion. *Lipka v. United States*, 249 F.Supp. 213, 216, 217 (N.D.N.Y. 1965), *aff'd on other grounds*, 396 F.2d 288 (2d Cir.1966), *cert. denied*, 388 U.S. 925, 87 S.Ct. 2129, 18 L.Ed.2d 1381 (1967) ("[T]he picking and choosing involved in the selection process is the very essence of a discretionary function"). The Court must conclude, then, that section 2680(a) bars the claims raised by Plaintiffs in this case.[11] *See Dugan v. United States*, No. 81–1635, slip op. (E.D.Pa. Nov. 19, 1982), *aff'd without opinion*, 722 F.2d 731 (3d Cir.1983) (since agency responsible for choosing training programs based on standards requiring exercise of reasonable inquiry into various areas, award of outside contracts to provide training necessarily discretionary).

### Conclusion

Based on the foregoing, the Court is of the opinion that Plaintiffs' Complaint should be, and it is hereby, DISMISSED.

SO ORDERED.

does not indicate clearly that the prospective contractor is responsible.

10. DAR 1–906, Subcontractor Responsibility, provides:

(b) Notwithstanding the general responsibility of a prospective contractor to demonstrate the responsibility of his prospective subcontractors, it may be in the Government's best interest to make a direct determination of the responsibility of one or more prospective subcontractors prior to award of the prime contract.

11. Section 2680(a) provides immunity to the federal government even where the discretion exercised has been abused. 28 U.S.C. § 2680(a). *See also Scanwell*, 521 F.2d at 948 (even though regulations ignored by contracting officer, possible abuse of discretion did not render 2680(a) inapplicable). *Cf. Myers*, 527 F.2d at 1261 (the discretionary function exception does not apply where government acts unconstitutionally or in contravention of own regulations).