**Michael AVERY**

v.

**UNITED STATES of America.**

**Civ. No. H-76-286.**

United States District Court,
D. Connecticut.

June 15, 1977.

938

Frank Cochran, Conn. Civil Liberties Union, Hartford, Conn., Donald R. Holtman, Connolly, Holtman & Losee, West Hartford, Conn., for plaintiff.

Frank H. Santoro, Asst. U. S. Atty., Peter C. Dorsey, U. S. Atty., New Haven, Conn., for defendant.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The plaintiff, Michael Avery, has brought this action against the United States of America, seeking money damages for injuries allegedly sustained by him as a result of the wrongful acts of government intelligence agents. The plaintiff claims that the Central Intelligence Agency (CIA) invaded his rights by illegally opening his mail, and asserts that damages for such an invasion are cognizable under the government's general waiver of sovereign immunity, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680.

The defendant has moved to dismiss the complaint pursuant to Rule 12(b) of the F.R.Civ.P., for lack of subject matter jurisdiction and for failure to state a claim upon which relief might be granted. The Court finds that the government has waived sovereign immunity under the FTCA [1] so as to encompass the acts complained of, and the Court accordingly denies the defendant's motion to dismiss.

## FACTS

The circumstances underlying plaintiff's complaint are as follows: [2] The CIA is an agency of the United States, charged with correlating, evaluating and disseminating intelligence data relating to the national security. 50 U.S.C. § 403(d). During the period from 1953 to 1973 the CIA engaged

---

1. In *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) the Supreme Court held that negligent firefighting could be a valid basis for suit under the FTCA, stating that

 "[i]t may be that it is 'novel and unprecedented' to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability." 352 U.S. at 319, 77 S.Ct. at 377.

2. The CIA activities here at issue are detailed in the *Report to the President by the Commission on CIA Activities Within the United States* [the Rockefeller Commission Report], at 101–115 (1975); and in the *Supplementary Detailed Staff Reports on Intelligence Activities and the Rights of Americans, Book III, Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, United States Senate*, at 559–636.

in a comprehensive surveillance program, code-named HTLINGUAL, which concerned mail passing between the United States and the U.S.S.R.[3]

At its inception in 1953, HTLINGUAL was limited in scope to simple mail-cover surveillance, but it gradually expanded into an extensive mail opening and mail reading operation. By 1959 the following developments had occurred: at least partial approval of the operation had been secured from the Postmaster General; a formal counterintelligence project had been approved within the CIA; a liaison with the Federal Bureau of Investigation had been established; a laboratory for technical study of opened mail was operating at the project's New York City facility; all mail covers passing through the facility were being photographed; and HTLINGUAL was opening more than 13,000 letters per year.

The project continued through the 1960's, but encountered increasing resistance from officials of the Post Office Department and others. These pressures ultimately brought about the termination of the project in 1973, at the direction of Director of Central Intelligence James R. Schlesinger.

Over its twenty year lifespan, HTLINGUAL had access to over 28,000,000 pieces of mail. More than 215,000 letters were opened, read and photographed. Copies of these letters were kept on file, in a computerized record system, and many of the letters were made available to the FBI as intelligence information to evaluate with regard to possible anti-American activities.

The CIA never sought or obtained judicial approval of HTLINGUAL's mail openings, either by warrant or otherwise, although tampering with the mails has long constituted a criminal violation under federal statute.[4] Lawful means with judicial supervision could conceivably have been made available to the CIA, to serve its legitimate intelligence purposes, but no such means were sought.

The plaintiff has been informed by the government under the Freedom of Information Act that six letters written or received by him were intercepted and opened as part of HTLINGUAL. He has fulfilled the procedural prerequisites of an FTCA suit, *see* 28 U.S.C. § 2675, before bringing the instant action.[5]

3. For shorter periods during this time the CIA conducted surveillance involving other international mail, but those projects are not the subject of this litigation.

4. *See* 18 U.S.C. §§ 1692, 1701, 1702, 1708, 1709; *Id.* §§ 241, 371 (conspiracy). The Justice Department has decided not to criminally prosecute individuals for their involvement with HTLINGUAL. *Report of the Department of Justice Concerning Its Investigation and Prosecutorial Decisions with Respect to Central Intelligence Agency Mail Opening Activities in the United States.* (Jan. 14, 1977). Such a decision is one of prosecutorial discretion and does not affect the Court's consideration of the civil issues before it.

Pursuant to statute, and for strictly limited purposes (esp. customs searches), first class mail of foreign origin may be opened without a warrant, provided there exists "reasonable cause to suspect" a customs violation. *See* 19 U.S.C. § 482 (1970); *United States v. Ramsey,* —— U.S. ——, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). The actions alleged here do not fall within the customs exception, however. Indeed, even if they did, the following regulation, which accompanies the postal status, would prohibit an operation such as HTLINGUAL:

"No customs officer or employee shall read or authorize or allow any other person to read any correspondence contained in sealed letter mail of foreign origin unless a search warrant has been obtained in advance from an appropriate judge or U.S. magistrate which authorizes such action." 19 C.F.R. § 145.3 (1976).

5. To the knowledge of the Court, eight other actions have been brought under the FTCA in connection with the CIA mail openings. Those cases are: *Avery v. United States*, D.Minn., No. 4–76–347 (defendant's motion to dismiss denied, transferred to E.D.N.Y.); *Birnbaum v. United States*, E.D.N.Y., No. 76C–1837 (defendant's motion to dismiss denied); *Cruikshank v. United States*, D.Hawaii, 431 F.Supp. 1355 (defendant's motion to dismiss denied); *Driver v. United States*, D.R.I., No. CA76–0297 (no disposition); *Hardy v. United States*, D.D.C., No. 76–1423 (defendant's motion to dismiss granted); *Murphy v. United States*, N.D.Iowa, No. C76–12 (defendant's motion to dismiss granted); *Siebel v. United States*, N.D.Cal., No. C76–1737 SC (defendant's motion to dismiss granted); and *Wilson v. United States*, S.D.N.Y., No. 76 Civ. 3373 (defendant's motion to dismiss denied, transferred to E.D.N.Y.). In addition,

## ISSUE

The question presented by the defendant's motion to dismiss is whether the Congress has authorized suits against the United States based upon acts of the kind herein alleged.

## DISCUSSION OF THE LAW

█ Under the doctrine of sovereign immunity, the government is immune from suits by its citizens, except by its own consent. *See generally* 2 F. Harper & F. James, *The Law of Torts* 1607–1613 (1956) (Harper & James). Until 1946, the United States, as a sovereign body, was not generally liable for the wrongful or negligent acts of its agents or employees. This was changed radically in 1946 by the enactment of the Federal Tort Claims Act, as Title IV of the Legislative Reorganization Act, 60 Stat. 842, 28 U.S.C. § 2671 *et seq.*

The FTCA eliminated, in broad terms, the United States' previous immunity from liability in tort. It designated the federal courts as the forum for determining government liability

"for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The terms of the FTCA, however, placed limits on potential governmental tort liability. Some of these limitations are inherent in § 1346(b) itself, particularly the requirement that, for the government to be vicariously liable for the torts of an employee, such employee must act "within the scope of his office or employment". Other limitations on FTCA liability are expressed in specific statutory exceptions. *See* 28 U.S.C. § 2680.

Subsection (a) of Section 2680 generally excepts from action under the FTCA, claims based upon non-negligent acts of employees of the government in the execution of a statute or regulation, as well as claims

"based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The remainder of § 2680, subsections (b) through (n), makes more specific exceptions to FTCA liability, for particular kinds of government activities or torts. Two of those exceptions, subsections (b) and (h), are significant in the instant case. Section 2680(b) provides that FTCA actions shall not lie for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." Section 2680(h) similarly retains government immunity from

"[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . ." 28 U.S.C. § 2680(h).

The government argues that, between these four limitations on its liability under the FTCA—"the scope of employment," "discretionary function", "postal matter" and "intentional tort" exceptions—the United States has withheld permission to sue, and has retained its traditional sovereign immunity, as to the torts alleged.

### (a) *Scope of Employment*

Under § 1346(b), government liability for the torts of its employees is limited to acts committed "within the scope of [their] office or employment". The government ar-

---

CIA mail openings have been challenged under the Tucker Act, 28 U.S.C. § 1346(a)(2), and the Administrative Procedure Act, 5 U.S.C. §§ 701–706, in *Kipperman v. McCone*, N.D.Cal., 422 F.Supp. 860 (action dismissed). Finally, a class

action is pending against government agents in their individual capacities, entitled *Driver et al. v. Helms et al.*, D.R.I., 74 F.R.D. 382 (no disposition).

gues that if, as alleged, the CIA agents involved here were knowingly committing criminal violations in the formulation and implementation of HTLINGUAL, then they were not acting within the scope of employment of any government employee. Illegal activities, they argue, could not possibly be within any employee's authority. Thus, the government cannot be held liable under § 1346(b) for these acts.

 The thrust of this argument rests upon a misinterpretation of the term "scope of employment," the purpose of which is to incorporate a limit upon the doctrine of *respondeat superior* under the FTCA. Under the latter doctrine employers are held vicariously liable for the torts of their employees, but such vicarious liability is limited to torts committed by employees acting within the scope of their employment. This is so because it would be inequitable to hold the employer liable for torts not committed in the furtherance of his own interests. However, this limitation does not mean that the employer cannot be liable for acts not specifically authorized by him; otherwise, there would be no vicarious liability for even negligent wrongs of the employee, which were not directly commanded. *See generally* 2 Harper & James, *supra*, at 1374–1382 (1956); *Ira S. Bushey & Sons v. United States*, 276 F.Supp. 518 (S.D.N.Y. 1967), *aff'd*, 398 F.2d 167 (2d Cir. 1968). Moreover, it has come to be accepted that even willful torts are not necessarily outside the employee's scope of employment, even though malicious or criminal in nature. *See* 2 Harper & James, *supra*, at 1389–1392 (1956). The central question, however, in deciding whether or not an employee-tortfeasor acted within the scope of his employment is not whether he acted pursuant to an explicit or implicit authorization from his employer. Rather, the relevant question is whether the employee acted from a personal motive or with a motivation to serve his employer's interests. *See, e. g.*, 2 Harper & James, *supra*, at 1374–1375; W. Prosser, *Law of Torts*, 460–461, 464–466 (4th ed. 1971).

 In cases decided under the FTCA, the "scope of employment" limitation has barred government liability for intentional and legally unauthorized wrongs committed by government agents. *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956), concerned the actions of federal range managers who wrongfully and discriminatorily removed and destroyed horses belonging to the plaintiff Navaho Indians, which horses the plaintiffs had allowed to graze freely on the range. The federal agents had acted in violation of regulations which limited their authority to remove grazing livestock from the range. In opposition to government liability under the FTCA, it was argued that the federal agents had not acted within the scope of their employment, and hence that § 1346(b) did not authorize the suit. The Supreme Court rejected this argument, relying on law to the effect that "an employer is liable to third persons for the willful torts of his employees if the acts are committed in furtherance of the employer's interests or if the use of force could have been contemplated in the employment." 351 U.S. at 180, 76 S.Ct. at 751. Although they had exceeded their legal authority, the government agents still were within the scope of their employment.[6]

 Thus, even though the CIA agents in the present case may have acted illegally in opening plaintiff's mail, that fact is not determinative of whether they were within the scope of their employment in so doing. Their program was of a general type which might be contemplated for such a government agency, and they were clearly motivated by a desire to serve the government's

---

**6.** The applicable law as to the breadth of the scope of employment limitation is nominally that of the state where the tort occurred. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). Here, the situs of the alleged tortious activity was the State of New York, which has adopted a rule of *respon-* *deat superior* under which the employer is liable for his employee's tort, where committed in furtherance of the employer's interests, whether done negligently, wantonly, or even willfully. *Osipoff v. City of New York*, 286 N.Y. 422, 432, 36 N.E.2d 646 (1941).

needs, however misguided this desire may have been. There was no apparent personal or nongovernmental motivation behind the CIA's conduct, as is characteristically the case where employees act outside the scope of their employment. Hence, the "scope of employment" limitation in § 1346(b) is not a bar to plaintiff's action under the facts herein described.

#### (b) *Discretionary Function*

The most comprehensive of the exceptions to FTCA liability is made by § 2680(a). The first prong of this provision bars the use of the FTCA to attack the validity of legislation or regulations; no such attack is made here. The second prong of § 2680(a) prohibits FTCA claims wherein government agents have performed a "discretionary function" leading to the injury complained of.[7] The government argues that this exception relieves the government of liability for the CIA operation here in question.

By its nature, the "discretionary function" exception is necessarily vague. Considerable litigation has centered upon what its proper meaning and interpretation should be. Little of the available precedent concerning this exception, however, bears directly on the question of whether or not allegedly unconstitutional and illegal acts can be discretionary within the meaning of § 2680(a). Instead of dealing with the scope of the discretion protected by this exception, the cases generally examine whether the torts alleged resulted from decisions made at a policy making level of government.

The focus of the case law on the "discretionary function" question is illustrated by the leading decision, *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed.

1427 (1953). *Dalehite* involved claims against the government arising from a disaster in the port of Texas City, Texas, in which hundreds of people were killed in an explosion of fertilizer-grade ammonium nitrate which had been loaded onto a ship for export. The victims brought suit under the FTCA. In a decision which explored the legislative history and policy of the "discretionary function" exception, the Supreme Court found that the exception did apply to the facts of the case before them. The governmental determinations which brought about the catastrophe were basic policy decisions concerning the program for manufacturing and exporting the fertilizer, made at a level where the "discretionary function" exception was intended to operate. The Court loosely defined the discretion protected by § 2680(a) as "the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law."[8] 346 U.S. at 34, 73 S.Ct. at 967. The Court refrained from stating precisely where discretion under § 2680(a) should end. *Id.* at 35, 73 S.Ct. 956. Its holding was limited to a determination that the particular governments acts in question occurred at the planning rather than at the operational level, and thus were within the "discretionary function" exception. 346 U.S. at 42, 73 S.Ct. 956.

It is generally recognized that there is discretion involved in decisions made at any level of government, as to how best to accomplish the job at hand. *Dalehite* offers guidance on the question of when discretion is of the particular type meant to be excepted from the FTCA under § 2680(a). This is the issue commonly pursued in "discretionary function" cases. *See, e. g., Downs v.*

---

7. In providing the "discretionary function" exception, Congress felt a need to insulate the policy decisions which are necessarily the constant business of government from unwarranted and potentially disruptive judicial scrutiny. *See* H.Rep.No.2245, 77th Cong., 2d Sess., p. 10; S.Rep.No.1196, 77th Cong., 2d Sess., p. 7; H.Rep.No.1287, 79th Cong., 1st Sess., pp. 5–6; Hearings before House Com. on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., p. 33. *See also Dalehite v. United States*, 346

U.S. 15, 27–28, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

8. The Court's citation at this point includes a reference to *Marbury v. Madison*, 1 Cranch 137, 170, 2 L.Ed. 60 (1803). It is interesting to note that *Marbury*, at 170–171, provides authority for the general proposition that a government official cannot have discretion to commit unconstitutional or illegal acts.

*United States*, 522 F.2d 990 (6th Cir. 1975); *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974); *Smith v. United States*, 375 F.2d 243 (5th Cir.), *cert. denied* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967); *Dahlstrom v. United States*, 228 F.2d 819 (8th Cir. 1956); *Monarch Insurance Co. v. District of Columbia*, 353 F.Supp. 1249 (D.D.C.1973).

■ Such cases do not bear directly on the question at hand. The decision to engage HTLINGUAL seems clearly to have been made at a high enough policy level so as to ordinarily come within the ambit of § 2680(a). Regardless of the level or context of a particular government act, however, the official involved must act in accordance with certain limits upon his discretion. It is true that § 2680(a) excepts the government from liability for officials performing discretionary functions, "whether or not the discretion involved be abused." But there is a difference between abuse of discretion and lack of discretion. An official who abuses his discretion, by acting arbitrarily or discriminatorily, for example, will be protected by § 2680(a). But an official with no discretion in a particular area has no discretion to abuse; he can only act in excess of his authority.

■ *Hatahley v. United States, supra,* exemplifies the operation of this principle in the present context. In that case, as noted above, government agents wrongfully took property of the plaintiffs, in violation of their own regulations. The issue of whether the agents' actions were "discretionary functions" under § 2680(a) was raised, and the United States Supreme Court had little difficulty with it:

"We are here not concerned with any problem of 'discretionary function' under the Act . . . These acts were wrongful trespasses not involving discretion on the part of the agents, and they do give rise to a claim compensable under the Federal Tort Claims Act." 351 U.S. at 181, 76 S.Ct. at 752 (citation omitted).

If trespasses in violation of government regulations are not "discretionary functions," then, *a fortiori,* trespasses in violation of constitutional guarantees are not

"discretionary functions." *See Simons v. United States,* 413 F.2d 531 (5th Cir. 1969); *DeBonis v. United States,* 103 F.Supp. 123 (W.D.Pa.1952) (dictum); *but cf. Kiiskila v. United States,* 466 F.2d 626 (7th Cir. 1972).

■ The question of whether the "discretionary function" exception extends to acts committed in excess of a government agent's authority was treated by the Second Circuit in *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir. 1975). In that case, the government argued that the granting or denial of certain contracts by the Postal Service was a "discretionary function," excepted from the FTCA by § 2680(a). The court was not persuaded by the argument, and reasoned that

"The Government renews its argument that the 'discretionary function' exception applies. But here the appellants' argument is that the Postal Service has acted in contravention of its own regulations, if not unconstitutionally, in denying appellants a hearing prior to debarment from government contracting. *It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority. . . .* This distinguishes cases . . . which hold that even though discretion is abused, its exercise cannot give rise to a federal tort claim. . . . For here the appellants' claim is that the Postal Service lacked discretion to act in disregard of its own applicable regulations and of the Constitution." 527 F.2d at 1261 (emphasis supplied) (citations omitted).

Similarly, operation HTLINGUAL was in violation of its subjects' rights and in excess of its progenitors' discretion, and therefore was not excepted from the FTCA by § 2680(a).

### (c) *Postal Matter*

■ Section 2680(b) excepts from suit under the FTCA claims arising from the "loss, miscarriage, or negligent transmission of letters or postal matter." Since the plaintiff's claim in this case involves letters,

the government argues that it is barred by the exception. However, the language of the exception refers to "loss, miscarriage, or negligent transmission," and plaintiff alleges none of these. The plaintiff's letters were neither lost, miscarried, nor negligently transmitted; they were intentionally taken out of the mail, to become the subject of HTLINGUAL, with all that that entailed. The rationale of the "postal matter" exception, that the government should not be liable for the mishandling of mail by the post office,[9] does not support its application here. Finally, the cases cited by the government to support the application of the exception are inapposite.[10] The CIA activities alleged here do not fit the "postal matter" exception of the FTCA.

### (d) Section 2680(h)

 Section 2680(h), which can be loosely characterized as the "intentional torts" exception, bars suit against the United States for specified intentional torts of its employees. The torts enumerated in the provision are "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, [and] interference with contract rights." Plaintiff's legal claim, which basically sounds in the constitutional tort of invasion of privacy, is not among the specific intentional torts excepted by § 2680(h).

The government argues, however, that this enumeration of intentional torts is not exclusive, and that the Court should find an "implied exception" for the tort here alleged.[11]

There is no legislative history which speaks directly to the question of the exclusiveness of the list of intentional torts in § 2680(h). However, the terms of the FTCA itself suggest that the exception was not meant to apply to all intentional torts. Section 1346(b) refers to "wrongful" as well as "negligent" acts as constituting grounds for government liability. To accept the government's argument for implied § 2680(h) inclusions, however, would suggest an FTCA exception for *all* intentional torts, a result which would render the inclusion of "wrongful" acts in § 1346(b) meaningless. The government suggests no limiting principle which might prevent this anomaly.

None of the cases cited by the government on this issue found implied exceptions beyond those intentional torts specifically enumerated in § 2680(h). *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) involved a claim by a federal prisoner for injuries due to the negligence of a federal employee and the passing reference to § 2680(h) [12] does not even purport to delineate the scope of that ex-

9. *See* Jayson, *Handling Federal Tort Claims* § 255 (1977).

10. *Marine Insurance Co. v. United States*, 378 F.2d 812 (2d Cir.), *cert. denied*, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 361 (1967), involved loss of mail in connection with an investigation of certain mail thefts. In *Goodman v. United States*, 324 F.Supp. 167 (M.D.Fla.), *aff'd*, 455 F.2d 607 (5th Cir. 1971), the court referred only peripherally to the "postal matter" exception, in dismissing broad allegations of a government conspiracy.

11. A conceivable argument for excepting the conduct in the instant case, though not pressed here, runs along the following lines: The Congress enacted a proviso to Section 2680(h) in 1974, P.L. 93–253, 88 Stat. 50, which retracted the exception for certain intentional torts of "investigative and law enforcement officers." This "exception-to-the-exception" does not, by its terms, apply to CIA agents. Thus it is arguable that, since the CIA is not covered by the proviso, there is indicated an affirmative congressional intention to afford government immunity for the activities of the CIA. Such an argument is quite attenuated, however, and is not supported by the legislative history which indicates congressional recognition that government liability for intentional torts is sustainable independent of the new proviso. *See* S.Rep.No.588, 93d Cong., 2d Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Admin. News, pp. 2789, 2791. *See also* J. Boger, M. Gitenstein & P. R. Vercuil, "The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis" 54 N.C.L.Rev. 497, 518 (1976).

12. "Also, the Government is not liable for the intentional torts of its employees, 28 U.S.C. § 2680(h), for which prisoners might be especially tempted to initiate retributive litigation." 374 U.S. at 163, 83 S.Ct. at 1858.

ception. Other cases have involved intentional torts which were among those specifically enumerated in the exception. *Kessler v. General Services Administration*, 341 F.2d 275 (2d Cir. 1964) (libel); *Dupree v. United States*, 264 F.2d 140 (3d Cir. 1959) (interference with contract rights); *Small v. United States*, 333 F.2d 702 (3d Cir. 1964) (interference with contract rights). *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), did not concern a claim for an exception under § 2680(h), and *Bell v. Hood*, 71 F.Supp. 813 (S.D.Cal.1947) (on remand from the Supreme Court) did not involve a federal tort claim. *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), which the government cites for comparison, states the proper approach on this question: "There is no justification for this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it." 352 U.S. at 320, 77 S.Ct. at 377 (footnote omitted).

In several cases cited by the plaintiff, FTCA liability has been imposed for intentional torts not enumerated in § 2680(h). *See Hatahley v. United States, supra* (trespass); *Ira S. Bushey v. United States*, 276 F.Supp. 518, 526 (S.D.N.Y.1967), *aff'd*, 398 F.2d 167 (2d Cir. 1968) (trespass); *United States v. Ein Chemical Corp.*, 161 F.Supp. 238, 246 (S.D.N.Y.1958) (conversion); *Black v. United States*, 389 F.Supp. 529, 531 (D.D. C.1975) (invasion of privacy). The government makes no attempt to explain or distinguish these cases.

Having reviewed the relevant exceptions to governmental liability under the FTCA, the Court finds that none of the grounds for dismissal urged by the government is sufficient to defeat the plaintiff's stated cause of action. The CIA activities which the plaintiff alleges were not beyond the scope of the agents' employment, nor were said actions a "discretionary function" within the meaning of the Act, since a government agent is not authorized to exercise his discretion through illegal means. The Court finds further that the postal matter and intentional tort exceptions are inapplicable.

Although the performance of the intelligence functions entrusted to government agencies such as the CIA and FBI are of the highest importance to the well-being and security of the nation, the principles of constitutional liberty must not be abandoned; especially where—as here—alternate lawful, constitutional means could be used, incorporating judicial supervision of proposed activities, to substantially accomplish the essential responsibilities of the agency. Accordingly, the defendant's motion to dismiss is denied.

SO ORDERED.