H. Leslie SANBORN, Jr., et
al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

Civ. No. S–76–154.

United States District Court,
E. D. California.

Sept. 19, 1977.

Phillip A. Cooke, Arostegui, Islip, Cooke, Marquez, Epley & Gengler, Marysville, Cal., for plaintiffs.

Dwayne Keyes, U. S. Atty., Richard W. Nichols, Chief Asst. U. S. Atty., Sacramento, Cal., for federal defendants.

Evelle J. Younger, Atty. Gen., State of Cal., John M. Morrison and Steward L. Andrews, Jr., Deputy Attys. Gen., Sacramento, Cal., for state defendants.

## MEMORANDUM

MacBRIDE, Chief Judge.

This matter is before the court on the motion to dismiss of defendants United States, Department of the Interior, Bureau of Reclamation, and Army Corps of Engineers. These defendants, together with the State of California, have been sued by numerous named plaintiffs in an attempt to redress damage to trees, crops, and real property caused by excess water standing on their land during April 1974.

Plaintiffs have sought to allege fifty-seven causes of action in their complaint, with each cause of action seeking to state a claim for relief for inverse condemnation, negligence, and trespass. Attacking these claims, the federal defendants base their motion to dismiss on the following grounds: (1) lack of jurisdiction over the federal defendants other than the United States, (2) lack of jurisdiction over the subject matter, and (3) failure to state a claim upon which relief may be granted.

### Improper Federal Defendants

■ Federal defendants properly argue that, absent specific statutory authority, agencies of the United States, such as the Department of the Interior, the Bureau of Reclamation, and the Army Corps of Engineers, may not be sued in their own name (*eo nomine*). *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Accordingly, all federal defendants in this action, other than the United States, must be dismissed.

### Jurisdiction over The Subject Matter

■■ Plaintiffs have failed to allege in their complaint a statement of the "grounds upon which the court's jurisdiction depends," as required by FRCP 8(a). However, the court cannot agree with the contention of the federal defendants that this defect is fatal to plaintiffs' action. This Circuit has taken the rather liberal position that " . . . if facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded." *Williams v. United States,* 405 F.2d 951, 954 (9th Cir. 1969). In the case at bar, the plaintiffs have argued in their memoranda that this court has jurisdiction over their inverse condemnation claims pursuant to the Tucker Act, 28 U.S.C. § 1346(a), and jurisdiction over their negligence and trespass claims pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Facts supporting such jurisdiction do appear in plaintiffs' complaint, with the exception discussed below, and little would be gained by requiring the plaintiffs to amend their complaint to include a statement of jurisdiction. Therefore, the court must deny the federal defendants' motion to dismiss based on the plaintiffs' noncompliance with FRCP 8(a).

■ Plaintiffs seek to have this court assume jurisdiction over the claims against

the State of California under the doctrine of pendent or ancillary jurisdiction. They would append their state claims against California to their claims against the federal defendants. The federal defendants contend that such joinder is improper, thereby rendering the plaintiffs' complaint defective. The implication is that the court should dismiss the claims against the federal defendants because of this defect. It is well established in this Circuit that such joinder of parties is impermissible. As was noted in *Williams v. United States, supra,* 405 F.2d at 954:

> "This court has repeatedly held that in order for a claim against the other parties to be joined properly with a claim against the United States under the Federal Tort Claims Act, an independent ground of jurisdiction must exist, and the theory of pendent jurisdiction is not sufficient."

*Accord, Morris v. United States,* 521 F.2d 872 (9th Cir. 1975); *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977). No independent ground of federal jurisdiction over the claims against California is alleged or indicated by plaintiffs. It does not follow, however, that improper joinder requires dismissal of the claims against the federal defendants. No authority is cited which would support such a dismissal. Rather, since the claims against California have been improperly joined, and this court is therefore without jurisdiction over the claims against California, the claims against California must be dismissed. Pursuant to FRCP 12, this court possesses the power to dismiss a claim *sua sponte* where lack of subject matter jurisdiction is called to the attention of the court, and this is an appropriate case to exercise that power.

The court also finds that it lacks subject matter jurisdiction over plaintiffs' claims for inverse condemnation. No jurisdiction over a claim against the United States exists unless its sovereign immunity is waived. The Tucker Act, 28 U.S.C. §§ 1491, 1346(a)(2), does waive the sovereign immunity of the United States with respect to inverse condemnation cases. *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Section 1346(a)(2) [1] vests district courts and the Court of Claims with concurrent jurisdiction over taking claims seeking no more than $10,000 in damages. Section 1491 [2] vests the Court of Claims with exclusive jurisdiction over inverse condemnation claims exceeding $10,000. *Blanchette v. Connecticut General Insurance Corp.,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Myers v. United States,* 323 F.2d 580 (9th Cir. 1963). Each of plaintiffs' taking claims seek damages in excess of $10,000, and therefore are within the exclusive jurisdiction of the Court of Claims.

Plaintiffs seek to avoid the $10,000 limitation on this court's inverse condemnation jurisdiction by reliance on 28 U.S.C. § 1500, which provides:

> "*The Court of Claims shall not have jurisdiction of any claim* for or *in respect to which the plaintiff* or his assignee *has pending in any other court any suit* or process *against the United States* or any person who, at the time when the cause of action alleged in such suit *or process* arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." (emphasis added).

They read this provision to mean that where a plaintiff has a Federal Tort Claims

1. Section 1346(a)(2) provides in pertinent part:

    "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

    \* \* \* \* \* \*

    (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort."

2. Section 1491 provides in pertinent part:

    "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Act claim filed in a federal district court arising from a particular incident, the Court of Claims may not assume jurisdiction over a Tucker Act suit arising from the same transaction. And plaintiffs reason from this construction that, since the Court of Claims may not assume jurisdiction over the Tucker Act inverse condemnation claim, the district court must have jurisdiction. Both plaintiffs' construction of Section 1500 and plaintiffs' reasoning are in error.

■ The purpose of Section 1500 belies plaintiffs' proposed construction:

"The purpose of Sec. 1500, supra, was to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Frantz Equipment Co. v. United States,* 98 F.Supp. 579, 580, 120 Ct.Cl. 312 (1951). See also *Matson Navigation Co. v. United States,* 284 U.S. 352, 52 S.Ct. 11, 76 L.Ed. 515 (1931); *National Cored Forgings Co. v. United States,* 132 F.Supp. 454, 132 Ct.Cl. 11 (1955). This goal is accomplished by divesting the Court of Claims of jurisdiction over a given claim where the plaintiff has the same claim pending in the district court. *Matson Navigation Co. v. United States, supra.* When a plaintiff has a tort claim pending in a district court, the jurisdiction of the Court of Claims over an inverse condemnation claim arising out of the same facts is not affected since the latter claim is not the same as the former.

■ Even assuming *arguendo,* that the Court of Claims is divested of its jurisdiction over plaintiffs' inverse condemnation claim because they filed a tort claim with this court, it does not follow that this "lost" jurisdiction becomes vested in the district court. The jurisdiction of the district court to entertain suits against the United States is dependent upon express waivers of sovereign immunity, which are to be strictly construed. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The only express waiver of sovereign immunity which vests the district court with jurisdiction over inverse condemnation claims against the United States is set forth at 28 U.S.C. § 1346(a)(2),

and it limits the district court's jurisdiction to claims involving $10,000 in damages or less. Nowhere in 28 U.S.C. § 1500 does it say that, where the Court of Claims loses its jurisdiction, said jurisdiction becomes vested in the district courts. Absent such a provision, this court cannot find that Section 1500 operates to vest this court with jurisdiction over inverse condemnation claims which seek over $10,000 in damages.

■ In another attempt to circumvent the $10,000 limitation on this court's jurisdiction over inverse condemnation actions, plaintiffs argue that the court may assume jurisdiction over their inverse condemnation claims pursuant to the doctrine of pendent or ancillary jurisdiction. Plaintiffs reason that this court has jurisdiction over their tort claims pursuant to 28 U.S.C. § 1346(b), the Federal Tort Claims Act, and that it may assume jurisdiction over their Tucker Act inverse condemnation claims by appending these claims to their Federal Tort Claims Act claims. However, plaintiffs offer no authority for the startling idea that the doctrine of pendent or ancillary jurisdiction may be utilized by a district court to avoid the well established requirement of a waiver of sovereign immunity. The United States has nowhere expressly consented to be sued on inverse condemnation claims in the district courts where such claims seek more than $10,000 in damages. This court cannot, by using the judge-made doctrine of pendent jurisdiction, waive the immunity of the United States where Congress, the constitutional guardian of this immunity, has declined to do so. Consequently, plaintiffs' taking claims against the defendants must be dismissed for lack of subject matter jurisdiction.

*Failure to State a Claim*

Federal defendants also argue that plaintiffs' tort and taking claims should be dismissed for failure to state a claim. With respect to the taking claims, defendants contend that: (1) no taking-by-flooding claim is stated because only a single flood is alleged, (2) no taking-by-seepage claim is stated because only "consequential dam-

ages" are alleged, and (3) no taking claim is stated because from the allegations of the complaint it appears that the immunity provisions of 33 U.S.C. § 702c apply. Defendants maintain that plaintiffs have failed to state a claim in tort because the immunity provisions of 33 U.S.C. § 702c apply. Since this court is without jurisdiction over plaintiffs' inverse condemnation claims, it need not decide whether the plaintiffs have failed to state proper taking claims.[3] This finding, however, does not dispose of defendants' further contention that no tort claim is stated because of the asserted immunity.

By enacting the Flood Control Act of 1928, Congress undertook to construct flood control projects, an undertaking which might have exposed the government to considerable liability. To limit this exposure, § 3 of the Flood Control Act of 1928, 33 U.S.C. § 702c, was adopted. Section 702c (Section 3 of the Act) reads in pertinent part:

> "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."

The aforementioned purpose was recognized in *Graci v. United States*, 456 F.2d 20, 25 (5th Cir. 1971):

> "These cases, and what little legislative history there is, strongly support the view that the purpose of § 3 was to place a limit on the amount of money that Congress would spend in connection with flood control programs. Congress undoubtedly realized that the cost of extensive flood control projects would be great and determined that those costs should not have added to them the floodwater damages that might occur in spite of federal flood control efforts. See *National Manufacturing Co. v. United States*,

*supra* [8 Cir., 210 F.2d 263]; *Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp.*, N.D.Cal.1954, 126 F.Supp. 406, 408."

While plaintiffs acknowledge that this immunity applies generally to flood cases involving the operation of flood control projects, they contend that § 702c does not apply to their case because of the existence of two exceptions.

■ First, plaintiffs argue that Section 702c does not afford immunity where the negligence of the United States was the sole cause of the flooding. Plaintiffs concede that if the negligence of the federal defendants and some unusual climatic condition together caused the flooding, or if the unusual climatic condition alone caused the flooding, the federal defendants may be immune under Section 702c. In support of their position, plaintiffs cite *Stover v. United States*, 204 F.Supp. 477 (N.D.Cal.1964), in which Judge Halbert did state in *dicta* that Section 702c does not apply where the negligence of the United States is the sole cause; Judge Halbert went on to find that Section 702c did apply because the United States and the climate were jointly responsible for the flooding in question. On appeal, the Ninth Circuit, following its earlier decision in *Clark v. United States*, 218 F.2d 446 (9th Cir. 1954), affirmed Judge Halbert's decision on the ground that Section 702c precluded liability even where the negligence of the United States was the sole cause of the damaging flood. *Stover v. United States*, 332 F.2d 204 (9th Cir. 1964). *Accord, Parks v. United States*, 370 F.2d 92 (2nd Cir. 1966); *Florida East Coast Ry. Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975). Therefore, even assuming that the negligence of the United States was the sole cause of the flooding, Section 702c applies.

---

**3.** It may be noted, however, that plaintiffs have only alleged that they were subjected to a single flooding. Such an allegation fails to state a claim for inverse condemnation. *United States v. Cress*, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1916); *B. Amusement Co. v. United States*, 180 F.Supp. 386, 148 Ct.Cl. 337 (1960); *Fromme v. United States*, 412 F.2d 1192, 188 Ct.Cl. 1112 (1969); *Hartwig v. United States*,

485 F.2d 615, 202 Ct.Cl. 801 (1973); *Stover v. United States*, 332 F.2d 204 (9th Cir. 1964). Had they alleged that, due to the conduct of the United States, they will inevitably be subjected to future floods which would not otherwise occur, a taking would have been stated. But no such allegations appear in plaintiffs' complaint.

■ Second, plaintiffs contend that Section 702c does not afford the government immunity where the flooding causing the damage complained of was unrelated to a flood control project. This the government concedes, as it must. Government Reply Memorandum, p. 8; *Peterson v. United States*, 367 F.2d 271 (9th Cir. 1966). In *Peterson*, plaintiffs sued the United States to obtain relief for damage to their boats. These boats were destroyed when, without warning, a group of Air Force engineers dynamited an ice jam on an Alaskan river, thereby causing a sudden release of water to sweep downstream where plaintiffs' boats were moored. The ice jam, which had accumulated from natural causes, was blown up in order to abate the flooding of United States Air Force base upstream from the ice jam. The district court dismissed the plaintiffs' claims, relying on Section 702c. On appeal, the Ninth Circuit reversed, reasoning that Section 702c was enacted to prevent liability that might be incurred in connection with flood control projects undertaken by the United States. The appellate court found that this purpose would not be served by the application of the Section 702c immunity to the case before it:

> "The decision to dynamite the ice jam was wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization." 367 F.2d at 275.

This requirement that the act complained of be related to a flood control project was reaffirmed in *dicta* in *McClaskey v. United States*, 386 F.2d 807 (9th Cir. 1967), and has been approvingly noted in *Florida East Coast Ry. Co. v. United States, supra; Parks v. United States, supra;* and *Graci v. United States, supra*. In *Graci*, the government sought to invoke the Section 702c immunity with respect to a claim arising out of the operation of a navigational aid project, which was unconnected to flood control. The district court found that the immunity did not apply, and the Fifth Circuit affirmed, stating:

"The question then becomes whether it is reasonable to suppose that in exchange for its entry into flood control projects the United States demanded complete immunity from liability for the negligent and wrongful acts of its employees *unconnected with flood control projects*. Judge Heebe answered that it would not be reasonable so to conclude. [*Graci v. U. S.*] 301 F.Supp. [947] at 952. Our analysis of another group of § 3 cases leads us to agree." (emphasis in original).

■ The government argues that the plaintiffs have the burden of pleading facts which indicate that the Section 702c immunity does not apply. No authority is offered. Since this immunity is an affirmative defense, the court must reject the government's argument and find that the pleading burden with respect to the immunity is on the government. FRCP 8(c). However, even though the plaintiffs need not plead in a manner to bring their claims outside the immunity, if the allegations in their complaint indicate that the immunity applies, the court must dismiss the plaintiffs' claims for failure to state a claim.

According to the federal defendants, plaintiffs' own allegations bring their claims within the immunity. Plaintiffs allege with respect to the cause of their injuries the following:

"During the months of March and April, 1974, the coordination of water releases affecting the amount of water in the Sacramento River Basin in the area of plaintiffs' property and/or condition of the Sacramento River bed and/or levee system was maintained in a condition so as to cause the river to be held at a high level for a sustained period of time during which period water flooded onto and/or seeped upon the property of plaintiffs and to plaintiffs' understanding killed and/or injured trees and/or crops belonging to plaintiffs by having water remain standing on same property during the warm days in April." Complaint, p. 3.

With respect to the parties precipitating the foregoing, plaintiffs allege:

"Plaintiffs are informed and believe and on such information and belief allege that at all times herein mentioned the United States of America, through the Department of the Interior, Bureau of Reclamation, and the Army Corps of Engineers, and the State of California, were acting in the capacity of joint venturers as to the control of the waters which flowed onto the plaintiffs' land." Complaint, p. 3.

"At all times herein mentioned plaintiffs are informed and believe and thereon allege that the United States of America, through the Department of the Interior, Bureau of Reclamation, and/or Army Corps of Engineers, and/or the State of California, each individually and/or part of the joint venture generally known as the Central Valley Project were in some way responsible for the coordination or lack thereof of the releases of water along the Sacramento River which damaged plaintiffs' crops and real property." Complaint, pp. 3–4.

These allegations do not clearly bring the plaintiffs' claims within the immunity. Certainly, the court can take judicial notice that the Sacramento River is included within the Central Valley Project and that the Central Valley Project has, as one of its many purposes, flood control.[4]

However, while the pleadings suggest that the alleged damage resulted from the operation of this multi-purpose project, the pleadings also are susceptible to another theory—that the damage resulted from activity of the defendants unrelated to the operation of the Central Valley Project. Plaintiffs' allegations do not indicate the scope of the Central Valley Project, the existence or non-existence of activity by the defendants on the Sacramento River unre-

lated to the operation of the Project, or the location of the plaintiffs' property. Accordingly, the court cannot conclude as a matter of law that the water releases, river bed condition, and levee system condition complained of necessarily constitute allegations of misfeasance in connection with the operation of the Central Valley Project. Plaintiffs do allege that the defendants are ". . . each individually and/or part of the joint venture generally known as the Central Valley Project . . ." responsible for the water releases in question. This does suggest that the water releases were effected as part of the operation of the Central Valley Project. But even this allegation is subject to an alternative construction because of the use of the disjunctive— that the defendants were individually responsible for the flooding while not acting under the "joint venture generally known as the Central Valley Project. . . ." The federal defendants have cited the court to regulatory and statutory authority for the proposition that the Bureau of Reclamation and the Army Corps of Engineers are authorized to engage in flood control activity. But, no authority has been cited for the proposition that these defendants may *only* engage in activity related to flood control projects. Therefore, it is quite possible that the activity of the defendants allegedly giving rise to the plaintiffs' damages was unrelated to a flood control project. On this basis alone, the court must deny the federal defendants' motion to dismiss the plaintiffs' Federal Tort Claims Act claims.

Had the plaintiffs clearly plead that their damages resulted from the operation of the Central Valley Project for one of its intended purposes, the court would grant the federal defendants' motion to dis-

4. In *United States v. Gerlach Live Stock Co.,* 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950), the Supreme Court noted:

"In the Rivers and Harbors Act of August 26, 1937, § 2, 50 Stat. 844, 850, and again in the Rivers and Harbors Act of October 17, 1940, 54 Stat. 1198, 1199–1200, Congress said that 'the entire Central Valley project . . . is . . . declared to be for the purposes of improving

navigation, regulating the flow of the San Joaquin River and the Sacramento River, controlling floods, providing for storage and for the delivery of the stored waters thereof . . . .' The 1937 Act also provided that 'the said dam and reservoirs shall be used, first, for river navigation, improvement of navigation, and flood control . . . .'" *Id.* at 731, 70 S.Ct. at 958.

miss. Plaintiffs have maintained that, even if their damage resulted from the operation of the Central Valley Project, the Section 702c immunity would not bar their claims unless the particular activity which caused the damage was undertaken for the purpose of flood control. The government argues that the rule proposed by plaintiffs would render meaningless one of the primary purposes of the immunity: the avoidance of litigation and potential liability in connection with the operation of flood control projects. This will occur, the government says, because: ". . . it is very difficult, if not impossible, as a practical matter to segregate particular acre-feet or cubic-feet-per-second of water releases into precise categories of purpose; a single release may well serve multiple purposes, just as the project itself serves multiple purposes." Government's Response to Plaintiffs' Further Memorandum, p. 3. There being no evidence before the court on the difficulty of such an undertaking, the court must decline to accept the government's argument at this stage of the proceedings. But this does not end the court's inquiry. As noted earlier, Section 702c was enacted to limit the cost to the government of constructing flood control projects. Where the government participates in the construction of a multiple purpose project and one of the purposes is flood control, and if the operation of the project is held to subject the government to liability because of non-flood control activity, the government would be subjected to additional costs because of its efforts to control floods. Such a result could be avoided only if the government used rivers and dam sites solely for flood control purposes. Such an option was certainly not contemplated by Congress because of the obvious detriment to the public welfare in view of the many functions rivers serve in modern society. Accordingly, the court must conclude that the Section 702c immunity protects the government from liability for damage caused by floods allegedly caused by the operation of a river project which has, as one of its purposes, flood control, if the action giving rise to the damage was undertaken in furtherance of one of the purposes of the multiple purpose project.

IT IS THEREFORE ORDERED that the federal defendants' motion to dismiss plaintiffs' inverse condemnation claims for lack of jurisdiction is GRANTED for the reasons stated herein.

IT IS FURTHER ORDERED that the federal defendants' motion to dismiss plaintiffs' Federal Tort Claims Act claims against all defendants, for failure to state a claim, is DENIED.

IT IS FURTHER ORDERED that the federal defendants' motion to dismiss all of plaintiffs' claims against the Department of Interior, the Bureau of Reclamation, and the Army Corps of Engineers for lack of jurisdiction is GRANTED.

IT IS FURTHER ORDERED, *sua sponte*, that plaintiffs' claims against the State of California are dismissed for lack of jurisdiction.