GEVEKE & CO. INTERNATIONAL, INC., Plaintiff,

v.

KOMPANIA DI AWA I ELEKTRISIDAT DI KORSOU N.V., Defendant.

No. 79 Civ. 1867.

United States District Court, S. D. New York.

Dec. 20, 1979.

Morgan, Lewis & Bockius, New York City, for plaintiff; James W. Harbison, Jr., Michael B. Evanoff, Jeffrey R. Butrico, New York City, of counsel.

Coudert Brothers, New York City, for defendant; James M. Rhodes, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action is one for payment of $381,157.17, the balance due under a contract for the sale of two diesel generators. The parties to the contract are the plaintiff, Geveke & Co. International, Inc. ("Geveke") as seller and the defendant, Kompania Di Awa I Elektrisidat Di Korsou, N.V. ("KAE") as purchaser. Geveke is a New York corporation; KAE is a corporation formed under the laws of the Netherlands Antilles and is wholly-owned by the government of the island of Curacao.

Simultaneously with the commencement of this action Geveke applied for and was granted a writ of attachment pursuant to which the United States Marshal levied upon a diesel generator, part of the subject matter of the contract, title to which had passed to KAE, and which was then temporarily located in Auburn, New York.

Plaintiff has moved for summary judgment and filed its Local Rule 9(g) statement alleging that no dispute exists as to the contract, plaintiff's performance thereunder or the unpaid balance due it from KAE. The defendant concedes that the plaintiff is entitled to the balance due as claimed.

KAE contends[1] that its amenability to suit is governed by the Foreign Sovereign Immunities Act of 1976 (the "Immunities Act")[2], that the Act precludes attachment of the property of a foreign state as a means of obtaining jurisdiction and commencing a lawsuit in the United States, and hence that the Court is without jurisdiction over KAE.[3]

■ It is undisputed that KAE is a corporation wholly-owned by the government of Curacao and as such is a "foreign state" as that term is defined in 28 U.S.C., section 1603.[4]

---

1. It raises a separate defense that in connection with an unrelated lawsuit in Curacao between Geveke (as defendant) and another Antillean corporation, Kodela, KAE was served with an order of an Antillean court, in accordance with Antillean law, attaching the debt it owes to Geveke and prohibiting it from making payment on the debt upon pain of contempt and continued liability to the garnishor Kodela. This action was instituted by plaintiff after the debt due it was so attached in Curacao.

2. 28 U.S.C. §§ 1602–11.

3. Counsel for KAE states it consented to the order in this action confirming the attachment "to minimize litigation costs and the burdens on the court's time" and in the belief that ongoing settlement negotiations between Geveke and Kodela would be consummated. However, no settlement materialized following which defendant answered the complaint and plaintiff filed this motion.

4. 28 U.S.C. § 1603 in pertinent part provides:
   (a) A "foreign state" . . . includes . . . an agency or instrumentality of a foreign state as defined in subsection (b).

While the complaint alleges jurisdiction upon diversity of citizenship and an amount in controversy in excess of $10,000 under 28 U.S.C., section 1332(a)(2), given KAE's undisputed status as a foreign state jurisdiction must be based, if it exists at all, upon the jurisdictional statute added to Title 28 by the Immunities Act, 28 U.S.C., section 1330.

Congress through the Immunities Act sought to provide a comprehensive and exclusive scheme governing when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and when a foreign state is entitled to sovereign immunity.[5] In addition to its provisions codifying the rules of sovereign immunity to suit and to attachment, the Immunities Act also prescribed the jurisdiction of the United States district courts in cases involving foreign states.

The Immunities Act amended 28 U.S.C., section 1332 to delete references to foreign states that had previously been the source of subject matter jurisdiction in such cases. In place of these deleted references, the Immunities Act added section 1330 which was intended as a comprehensive treatment of district court jurisdiction in actions against foreign states or their entities.[6]

That section in pertinent part provides:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title *as to any claim for relief in personam* with respect to which the foreign state is not entitled to immunity [under the Immunities Act].

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, *or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof,* and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

. . . . .

(emphasis added)

While adding a measure of liberality to subject matter jurisdiction over actions against foreign states by removing the amount in controversy requirement formerly applicable under section 1332, section 1330(a) specifically limits the district courts' jurisdiction to in personam claims.

■ Viewed against the background of the Immunities Act as a whole, this limitation is neither arbitrary nor unintentional. To enforce it strictly not only comports with the clear language of the statute but with the equally clear intent of Congress. The restriction of subject matter jurisdiction to in personam claims stems from and furthers one of the basic objectives of the Immunities Act—to replace jurisdiction over foreign state defendants based upon prejudgment attachment with a comprehensive system of in personam jurisdiction incorporating concepts of due process and sovereign immunity.

Prior to the enactment of the Immunities Act a common method of obtaining jurisdiction over foreign states had been to attach their property in the United States (precisely as was done here). Congress recognized that such jurisdictional attachments were much criticized for creating litigation in United States courts based only upon the

(emphasis added)
Counsel for defendant has explained that it was only upon preparing for this motion that the ownership of KAE by the Curacao government became known to it.

5. House Report No. 94–1487 (Sept. 9, 1976), reprinted in 1976 U.S.Code, Cong. & Admin. News, pp. 6604, 6610 (hereafter, the House Report).

6. *Id.* at 6611–12.

fortuitous presence of property in the United States, and further that such attachments gave rise to "serious friction" in United States foreign relations.[7]

The Immunities Act was intended to remedy this situation by providing "for the first time in U.S. law . . . a statutory procedure for making service upon, and obtaining in personam jurisdiction over a foreign state [rendering] unnecessary the practice of seizing and attaching the property of a foreign government for the purpose of obtaining jurisdiction." [8]

The "statutory procedure" so provided creates what is in effect a "long arm" statute for obtaining personal jurisdiction over foreign states in specified exceptions where a foreign state is not entitled to immunity. These, among others, provide that a foreign state is not immune from jurisdiction where it has waived such immunity or where the suit against it is based upon its commercial activities having certain enumerated connections to the United States.[9] The procedure is completed by the provisions of section 1330. Section 1330 gives the federal courts jurisdiction over actions against a foreign state where the foreign state is not entitled to immunity under the Immunities

Act and in personam relief is sought if proper service has been made.

. . . . .

■ In short, in personam jurisdiction over a foreign state can be obtained if it has waived immunity to such jurisdiction or where it has sufficient commercial contacts with this nation relating to the claim asserted—satisfying the requirements of due process and the sovereign immunity doctrine.

As quid pro quo for the liberal availability of in personam jurisdiction through the "long arm" procedure just described, Congress took steps to eliminate the disfavored and now unnecessary use of jurisdictional attachments.[10] It created a virtually absolute immunity for foreign states to such attachments.[11] The elimination of prejudgment attachments for the purpose of obtaining jurisdiction constitutes the effective abandonment of in rem and quasi in rem jurisdiction against foreign states.[12]

Section 1330 was enacted in conjunction with the provisions of the Immunities Act discussed above and in furtherance of the same overall result. In obvious recognition of the fact that in rem actions against foreign states would no longer be necessary with the availability of in personam juris-

---

7. House Report at 6625–26.

8. *Id.* at 6606.

9. 28 U.S.C. § 1605 in pertinent part provides:
General exceptions to the jurisdictional immunity of a foreign state
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
(1) in which the foreign state has waived its immunity either explicitly or by way of implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

10. *See National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622, 638 (S.D.N.Y.1978), *aff'd*, 597 F.2d 314 (2d Cir. 1979); *Behring Intern. v. Imperial Iranian Air Force*, 475 F.Supp. 383, 393 n.26 (D.N.J.1979).

11. This immunity is found in 28 U.S.C. § 1609 which states generally that the property of a foreign state is immune from attachment and from execution. Limited exceptions to this general rule are created by sections 1610 and 1611. These exceptions apply to post-judgment attachments in aid of execution and to pre-judgment attachments whose sole purpose is to obtain security. "Neither section 1610 nor 1611 would permit an attachment for the purpose of obtaining jurisdiction over a foreign state or its property. For this reason, *section 1609 has the effect of precluding attachments as a means for commencing a lawsuit.*" House Report at 6625 (emphasis added).

12. *See* Von Mehren, *The Foreign Sovereign Immunities Act of 1976*, 17 Colum.J.Trans.L. 33, 45–47 (1978).

diction and that they would, in any event, be largely precluded by the immunity to jurisdictional attachment, Congress limited the grant of jurisdiction embodied in section 1330 to actions against foreign states based upon personal jurisdiction obtained via the Immunities Act and excluded in rem suits, necessarily based upon jurisdictional attachments, from the federal courts.

Here, plaintiff has expressly disavowed any claim for in personam relief—to the contrary, it explicitly asserts that its prejudgment attachment and levy upon the diesel generator is the sole ground for jurisdiction and that its action is one in rem. As stated in the plaintiff's moving papers: "This action, however, is one in rem, and in the final analysis concerns only the disposition of the attached diesel engine . . . [T]his court does not have in personam jurisdiction over KAE and [its] judgment can have 'no effect beyond the property attached.' "[13]

Accordingly, because this action is brought against a foreign state as defined in 28 U.S.C., section 1603 and is an action in rem not in personam, subject matter jurisdiction under section 1330(a) is lacking. The complaint therefore is dismissed and the attachment vacated.[14]

So ordered.

---

**13.** Plaintiff's Memorandum in Support, p. 9. *See also* Plaintiff's Reply Memorandum, p. 7.

**14.** F.R.C.P. 12(h)(3). *See Mertens v. Flying Tiger Line, Inc.,* 341 F.2d 851, 856 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965); *Sanborn v. United States,* 453 F.Supp. 651, 654 (E.D.Cal.1977). *See also* Wright & Miller, Federal Practice and Procedure § 1350, at 545 n.61.