**MORICI CORPORATION, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. S–77–218–TJM.**

United States District Court,
D. California.

Oct. 31, 1980.

---

Martin McDonough, Bruce McDonough, McDonough, Holland & Allen, Sacramento, Cal., for plaintiff.

William B. Shubb, U.S. Atty., Francis M. Goldsberry, II, Mary Beth Uitti, Asst. U.S. Attys., Sacramento, Cal., for defendant.

## OPINION

MacBRIDE, District Judge.

As set forth in this court's earlier Opinion, *Morici Corp. v. United States*, 491 F.Supp. 466 (E.D.Cal.1980) (hereinafter *Morici I*), plaintiff seeks to recover dam-

ages of $1,000,000 incurred as a result of the loss of fruit and nut trees and crops on plaintiff's land located on the banks of the Sacramento River downstream from the facilities of the Central Valley Project. The original complaint alleged in part:

> Beginning on or about December 1, 1973, and continuing through April, 1974, defendant, its agents and employees operated the [Central Valley] Project Works negligently, without due or reasonable care, so as to establish and maintain the flow in the Sacramento River above and adjacent to Princeton Ranch [plaintiff's property] at such high elevations as to cause water in large amounts to seep from the Sacramento River into Princeton Ranch. The seepage was the natural and predictable result of the high elevations.

Complaint at 2.

The United States successfully moved to dismiss the original complaint. As discussed at length in *Morici I*, this court granted the Government's motion to dismiss based on the immunity accorded to the United States by 33 U.S.C. § 702c which provides in part:

> No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place . . . .

The court held that this immunity applies to seepage waters that percolate through the ground as well as to flooding waters flowing on the surface of the earth. In addition, the court ruled that the Central Valley Project is clothed with immunity notwithstanding the multiple purposes for which the Project was authorized and is operated.[1] The court declared:

> section 702c immunizes the United States from liability for damages caused by floods deriving from the operation of a multi–purpose river project which has, as one of its purposes, flood control, when the actions giving rise to the damage

were undertaken in furtherance of any one of the authorized purposes of the project. This immunity clothes not only the facilities of the multi–purpose Central Valley Project which were specifically authorized and designed in part for flood control but also those other facilities, such as the Trinity River Diversion, which are an integral and essential part of the Project even though not specifically intended to further a flood control purpose, because the Central Valley Project is operated as an integrated whole in furtherance of its many authorized purposes.

*Morici Corp. v. United States, supra* at 492–93.

The original complaint did not explicitly allege that the operation of the Central Valley Project which gave rise to plaintiff's damages was in furtherance of one of the purposes of the Project. The court granted leave to amend so that plaintiff could, if it wished, allege that the operation of the Project had not been in furtherance of an authorized purpose. On August 4, 1980, plaintiff filed an amended complaint which alleges in part:

> 4. The [Central Valley] Project Works are capable of regulating the level of water in the Sacramento River below those works so as to greatly diminish or augment the natural flow of said River, at the direction of the operator. Defendant, its employees and agents, as operators of the Project Works, owed a duty of care to plaintiff to avoid unnecessary and harmful changes in the level of said River due to their operation of the Project Works.
>
> 5. Beginning on or about December 1, 1973, and continuing through April 1974, defendant, its agents and employees operated the Project Works negligently, without due and reasonable care, and *undertook actions not in furtherance of any of the intended and authorized purposes of*

---

1. This ruling and other rulings in *Morici I* were confirmed by the Ninth Circuit's subsequent decision in *Aetna Insurance Co. v. United States*, 628 F.2d 1201 (9th Cir. 1980), wherein the court ruled that section 702c immunized the United States from claims arising from the collapse of the Teton Dam.

*the project,* so as to establish and maintain the flow in the Sacramento River above and adjacent to Princeton Ranch at such high elevations as to cause water in large amounts to seep from the Sacramento River into Princeton Ranch. The seepage was the natural and predictable result of the high elevations.

6. As a direct and probable result of the negligent acts of defendant's employees and agents, *and their operations of the Project for purposes outside of the intended and authorized purposes of the works,* and the seepage which proximately resulted, plaintiff suffered injury and damage . . . .

Amended Complaint at 2.[2] The amendments of the complaint bring two legal questions into focus for decision: first, does an employee of the United States act "within the scope of his office or employment" for purposes of United States' liability under the Federal Tort Claims Act when he operates a government facility *ultra vires,* namely, in a manner either not in furtherance of or contrary to one or more of its intended and authorized purposes, and, second, does 33 U.S.C. § 702c immunize the United States from liability for flood damages that arise from such an *ultra vires* operation of a multi–purpose government facility intended in part to promote flood control. The court will address both of these questions.

### Scope of Employment

■ The Federal Tort Claims Act provides that the United States shall be liable for money damages for injury or loss of property

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *see* 28 U.S.C. §§ 2671, 2672, 2675. The choice of law dictates of the Act require that a determination whether a government employee was acting within the scope of his employment for purposes of United States liability is controlled by the respondeat superior principles of the state in which the alleged tort was committed. *Proietti v. Civiletti,* 603 F.2d 88, 90 (9th Cir. 1979), *citing Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam), *and United States v. McRoberts,* 409 F.2d 195, 197 (9th Cir. 1969) (per curiam).

As set out in the amended complaint, the negligent or wrongful act or omission that allegedly gave rise to plaintiff's injury occurred in California, so this court must look to the law of California in determining issues relating to the scope of employment. The recent *Proietti* decision reveals that "California's rule as to course and scope of employment is broad." *Proietti v. Civiletti, supra* at 90.

"It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's [authority] [employment]. Such conduct is within the scope of his [authority] [employment] if it oc-

2. In opposing dismissal, plaintiff explains:

it is one of plaintiff's theories that the damage complained of in this action resulted when agents and employees of the Bureau of Reclamation, by design or inadvertence, acted outside of the intended and authorized purposes of the [Central Valley Project] works. Specifically, plaintiff believes that discovery to be conducted in this matter will reveal that the high water levels in the Sacramento River which caused severe damage to plaintiff's crops resulted from the Bureau's attempts to assist a local public water agency in achieving certain goals and purposes be-

yond those contemplated by federal law and regulations.

Discovery may well disclose other non–project related purposes which the Bureau sought to serve, consistent with plaintiff's belief that the Bureau's actions could not have been designed to meet authorized project needs.

Plaintiff's Brief, filed October 16, 1980, at 1–2. Although these theories are not set forth in the amended complaint, the allegations therein are sufficient to satisfy the liberal pleading requirements of the Federal Rules of Civil Procedure.

curs while the agent is engaged in the duties which he was employed to perform and related to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's [authority] [employment]."

*Id.* at 90 n.1, *quoting* Book of Approved Jury Instructions, Instr. 13.01, California Jury Instructions, 6th ed. The factors cited by the California courts include

"the intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, the work he was hired to do, the incidental acts that the employer should reasonably have expected would be done, and the amount of freedom allowed the employee in performing his duties."

*Loper v. Morrison,* 23 Cal.2d 600, 145 P.2d 1, 4 (1944), *quoted in Proietti v. Levi,* 530 F.2d 836, 840 (9th Cir. 1976) (Wright, J., dissenting). *See also Ryan v. Farrell,* 208 Cal. 200, 204, 280 P. 945, 946 (1929), *followed in Wiseman v. Industrial Accident Comm'n,* 46 Cal.2d 570, 297 P.2d 649, 651 (1956); *Coats v. Construction & General Laborers Local No. 185,* 15 Cal.App.3d 908, 93 Cal.Rptr. 639 (1971); *McIvor v. Savage,* 220 Cal.App.2d 128, 33 Cal.Rptr. 740 (1963); *Gipson v. Davis Realty Co.,* 215 Cal.App.2d 190, 30 Cal. Rptr. 253 (1963); *Johnson v. Banducci,* 212 Cal.App.2d 254, 27 Cal.Rptr. 764 (1963); *Garber v. Prudential Insurance Co. of America,* 203 Cal.App.2d 693, 22 Cal.Rptr. 123 (1962).

The United States urges that any specific allegation that plaintiff might make that any agent or employee of the Government was acting *outside* of the authorized purposes of the [Central Valley Project] would remove plaintiff's claim from the ambit of the Federal Tort Claims Act.

United States Motion to Dismiss, filed Sept. 23, 1980, at 5. If this construction of the Federal Tort Claims Act were followed, then the Act would give with one hand what it took back with the other. No government facility or instrumentality is authorized or intended by Congress to be operated in a negligent or wrongful fashion. If the scope of employment requirement of the Federal Tort Claims Act were interpreted to permit United States' liability only in circumstances in which the employee was operating the facility strictly within the authorization and intent of Congress, then proof that the employee acted negligently or wrongfully would establish that the action was outside the Act's waiver of sovereign immunity. In other words, the very proof of negligence or wrongful action necessary for tort liability would defeat a plaintiff's attempt to impose liability on the United States. This cannot be.

The Supreme Court considered the interplay between proof of negligent or wrongful action by a government employee and proof of his scope of employment in *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). Plaintiffs in *Hatahley* were injured by the impoundment of their horses and burros by federal agents who sought to prevent unlawful grazing on federal range lands. Federal law permitted impoundment of such animals after service of written notice on their owners in accordance with local law. The federal agents failed to give the required notice before rounding up and destroying the animals. The Supreme Court held that the agents had acted without statutory authority because of their failure to give notice, and the Court then considered whether the United States could be liable under the Federal Tort Claims Act under the circumstances.

It is clear that the federal agents here were acting within the scope of their employment under both state and federal law. Under the law of Utah an employer is liable to third persons for the willful torts of his employees if the acts are committed in furtherance of the employer's interests or if the use of force could have been contemplated in the employment.... Both of these conditions obtained here. The federal agents were attempting to enforce the federal range law, and such enforcement must contemplate at least the force used in removal of

stock from the range. The fact that the agents did not have actual authority for the procedure they employed does not affect liability. *There is an area, albeit a narrow one, in which a government agent, like a private agent, can act beyond his actual authority and yet within the scope of his employment.*

*Id.* at 180–81, 76 S.Ct. at 751 (emphasis added).[3]

At the pleading stage, it is not possible for this court to determine whether the particular acts or omissions of government employees operating the Central Valley Project that gave rise to plaintiff's injury were within the scope of their employment even though not in furtherance of the intended and authorized purposes of the Project. Nonetheless, the *Hatahley* interpretation of the Federal Tort Claims Act and the relevant state law on scope of employment clearly demonstrate that the amended complaint is not subject to dismissal on the ground that it alleges that the negligent or wrongful acts giving rise to plaintiff's injury were undertaken for purposes outside the intended and authorized purposes of the Central Valley Project. Accordingly, the motion to dismiss is denied insofar as it is based on the contention that the allegation of *ultra vires* operation of the Central Valley Project precludes liability under the Federal Tort Claims Act.

**Scope of Immunity Under Section 702c**

The second question before the court is whether the broad immunity from damage actions granted to the United States by section 702c applies to preclude this suit for damages notwithstanding the fact, as alleged in the amended complaint, that the Central Valley Project was operated in a manner not in furtherance of or contrary to its intended and congressionally authorized purposes at the time of the act or omission giving rise to plaintiff's injury. This precise question has not been directly addressed in the cases construing section 702c.

In the factually related action, *Sanborn v. United States*, 453 F.Supp. 651 (E.D.Cal. 1977), this court rejected the plaintiffs' contention that section 702c would not immunize the United States from liability for operation of the Central Valley Project unless the particular activity causing the damage had been undertaken for the purpose of flood control:

> Section 702c was enacted to limit the cost to the government of constructing flood control projects. Where the government participates in the construction of a multiple purpose project and one of the purposes is flood control, and if the operation of the project is held to subject the government to liability because of non-flood control activity, the government

**3.** In *Avery v. United States*, 434 F.Supp. 937 (D.Conn.1977), the United States argued that, if, as alleged, the CIA agents whose surveillance of mail passing between the United States and Russia gave rise to the suit had been knowingly committing criminal violations, then the United States could not be held liable under the Federal Tort Claims Act because illegal activities could not be within the scope of the agent's employment. The *Avery* court disagreed:

> The thrust of this argument rests upon a misinterpretation of the term "scope of employment," the purpose of which is to incorporate a limit upon the doctrine of *respondeat superior* under the [Federal Tort Claims Act]. Under the latter doctrine employers are held vicariously liable for the torts of their employees, but such vicarious liability is limited to torts committed by employees acting within the scope of their employment. This is so because it would be inequitable to hold the employer liable for torts not commit-

ted in the furtherance of his own interests. However, this limitation does not mean that the employer cannot be liable for acts not specifically authorized by him; otherwise, there would be no vicarious liability for even negligent wrongs of the employee, which were not directly commanded.... Moreover, it has come to be accepted that even willful torts are not necessarily outside the employee's scope of employment, even though malicious or criminal in nature.... The central question, however, in deciding whether or not an employee-tort-feasor acted within the scope of his employment is not whether he acted pursuant to an explicit or implicit authorization from his employer. Rather, the relevant question is whether the employee acted from a personal motive or with a motivation to serve his employer's interests.

*Id.* at 942, *citing* 2 F. Harper & F. James, The Law of Torts 1374–82 (1956), *and* W. Prosser, Law of Torts 460–61, 464–66 (4th ed. 1971).

would be subjected to additional costs because of its efforts to control floods. Such a result could be avoided only if the government used rivers and dam sites solely for flood control purposes. Such an option was certainly not contemplated by Congress because of the obvious detriment to the public welfare in view of the many functions rivers serve in modern society. Accordingly, the court must conclude that the Section 702c immunity protects the government from liability for damage caused by floods allegedly caused by the operation of a river project which has, as one of its purposes, flood control, if the action giving rise to the damage was undertaken in the furtherance of one of the purposes of the multiple purpose project.

*Id.* at 659. In resolving the prior United States' motion to dismiss in the instant action, this court followed that analysis from *Sanborn* in holding that the umbrella of section 702c is at least broad enough to immunize the government from liability when the operation of the multiple purpose river project causing the injury was in furtherance of one of the project's authorized purposes, even if the particular acts or omissions were not undertaken to promote the flood control purpose. *Morici Corp. v. United States, supra.*

The *Sanborn* and *Morici I* decisions set the stage for the issue now before the court, namely, whether the breadth of section 702c will also encompass immunity for damages arising from the *ultra vires* operation of a multiple purpose river project whose authorized purposes include flood control. Resolution of this question is facilitated by a separate analysis of each of the several descriptive categories into which the acts or omissions of United States' employees[4] may be classified. For purposes of this analysis, the court will use the following descriptive categories:

(1) Acts involving a policy making and/or planning decision (discretionary function acts):

    (a) acts in conformity with[5] the authority and intent of the applicable enabling statute(s);[6]

    (b) acts not in conformity with such statutes.

(2) Acts undertaken at the operational level, not involving significant policy making or planning decisions:

    (a) acts in conformity with the authority and intent of the applicable enabling statute(s);

    (b) acts taken in a good faith effort to conform to such statutes that, nonetheless, are not in conformity with the authority granted and intended by Congress;

**4.** The term "employees" is used to include agents and other persons whose acts or omissions can give rise to United States' liability under the Federal Tort Claims Act. Not all persons who receive payment for work from the United States are "employees" within the meaning of the Federal Tort Claims Act's waiver of sovereign immunity. *See generally United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *United States v. N.A. Degerstrom, Inc.*, 408 F.2d 1130 (9th Cir. 1969); *United States v. Becker*, 378 F.2d 319 (9th Cir. 1967). *Compare Foster v. MacBride*, 521 F.2d 1304 (9th Cir. 1975), *with United States v. LePatourel*, 571 F.2d 405 (8th Cir. 1978), *on remand*, 463 F.Supp. 264 (D.Neb.), *rehearing en banc*, 593 F.2d 827 (8th Cir. 1979). The court need not pause to consider the distinctions. It must be assumed that the "employees and agents" referred to in the amended complaint include only those whose acts or omissions can give

rise to United States' liability under the Federal Tort Claims Act.

**5.** The phrase "in conformity with" should be read to include the phrase "in furtherance of."

**6.** The phrase "applicable enabling statute(s)" is intended to encompass all statutes that apply to and govern the administration of the United States' facility and the conduct of the employees who operate it. The term "statutes" is intended to encompass not only the congressional enactments, but also the administrative regulations, Executive Orders, and other legally promulgated edicts having the force of law. Moreover, insofar as governing federal law authorizes or directs the federal employees operating a federal facility to conform their conduct to state statutes or regulations, the term "statutes" is intended to include those state statutes and regulations.

(c) acts that are knowingly performed not in conformity with applicable enabling statutes.[7]

The term "acts" is used to include omissions, and it is assumed that the acts or omissions were negligent or wrongful. In the absence of negligent or wrongful conduct, of course, the United States would not be liable in any event. In addition, it is assumed that the acts were within the actor's scope of employment; the United States is not liable for acts of its employees that exceed the scope of their employment.

Given this analytical framework, it is possible to examine each category to determine whether liability may be imposed on the United States within the waiver of sovereign immunity in the Federal Tort Claims Act as limited by the immunity from liability for damages "from or by floods or flood waters" as provided in section 702c.

■■ The first category of acts involving a policy making or planning decision cannot give rise to United States' liability even if the particular act is not in conformity with the intent of Congress as expressed in applicable statutes authorizing the operation of the federal facility. Under Section 2680(a) of the Federal Tort Claims Act, the waiver of sovereign immunity does not extend to any claim

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). As explained in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952), this discretionary function exception to the waiver of sovereign immunity extends not only to the specific policy making decision but also to the acts or omissions of subordinate employees in furtherance of that decision.

> Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordi-

nates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Id.* at 36, 73 S.Ct. at 968. Of course, every decision involves some measure of discretion. At its broadest construction, section 2680(a) would wholly defeat the waiver of sovereign immunity by the Act. For that reason, in applying section 2680(a), the distinction is drawn "between those decisions which are made on a policy or planning level, as opposed to those made on an operational level." *Thompson v. United States,* 592 F.2d 1104, 1111 (9th Cir. 1979), *citing Martin v. United States,* 546 F.2d 1355 (9th Cir. 1976). For the purposes of the present analysis, it is unnecessary to determine where in the continuum of discretionary acts there is sufficient policy making discretion to bring the exception of section 2680(a) into play. It is sufficient to state that, insofar as plaintiff's injury was the result of policy decisions or acts of subordinates in furtherance of policy decisions within the meaning of the discretionary function exception, no liability may accrue to the United States by reason of section 2680(a). Moreover, there is no need to consider the effect of the flood damage immunity of section 702c because the acts falling within category (1) cannot give rise to United States' liability by virtue of section 2680(a).

■ Category (2) includes all those acts or omissions that do not fall into the discretionary function exception to the Federal Tort Claims Act. Turning to category (2)(a), acts at the operational level undertaken in conformity with the authority and intent of applicable federal law, even if negligently or wrongfully performed, can-

---

**7.** This category includes acts taken in bad faith or with malicious purpose, insofar as such acts are within the employee's scope of employ-

ment, as well as acts taken in good faith but knowingly not in conformity with the governing statutes and regulations.

not form the basis for United States' liability in those instances in which the flood damage immunity of section 702c is applicable. This conclusion is founded on the reasoning in *Sanborn* and *Morici I.* When the federal government embarks on a project which has as one of its purposes the control of floods, the decision to do so is made in the context of section 702c's broad immunity. Any imposition of liability based on floods or flood waters deriving from the operation of such a project, no matter what particular purpose may have been furthered by the specific operation giving rise to the flood damage, would contravene the immunity provided by section 702c.

■ Category (2)(b) includes those acts or omissions in the operation of the multiple purpose project which are undertaken in a good faith effort to conform to the intent and authority of governing federal law but which fail to conform to the dictates of that law through some mistake or error of understanding or judgment. Such acts or omissions would give rise to United States' liability under the Federal Tort Claims Act unless the immunity of section 702c applies to bar the imposition of liability on the Government. The *Sanborn* and *Morici I* decisions do not address the application of section 702c in these circumstances because the complaints under consideration in those cases explicitly or implicitly alleged that the negligent acts or omissions at issue had been undertaken in furtherance of one or more of the authorized purposes of the federal facilities in the multiple purpose project. Nevertheless, the rationale for application of section 702c set forth in *Sanborn* and *Morici I* is as compelling in category (2)(b) as in category (2)(a). In the final analysis, the Government can act only through its employees and agents who are fallible. Despite all good intentions and good faith, humans make mistakes. The error may occur in understanding the scope of authority granted by the enabling statutes or in the improper execution of a correctly understood direction. In enacting section 702c's broad and emphatic immunity, Congress must have intended to immunize the United States from liability for its

employees' good faith failures to act in accordance with governing law in the performance of their duties in operating a flood control facility or a multiple purpose facility authorized in part for flood control purposes. It would be logically inconsistent to conclude that Congress immunized the United States from liability for negligent acts committed in the course of performing duties in conformity with governing law but did not immunize the United States from liability for negligent or wrongful acts committed when an employee attempts in good faith but fails to conform to governing federal law. On this reasoning, then, the court concludes that section 702c immunizes the United States from liability for damages from floods or flood waters which occur as a result of an employee's good faith failure to conform to the applicable enabling statutes. Thus, acts and omissions falling within category (2)(b) do not give rise to United States' liability by reason of the immunity of section 702c.

■ Only category (2)(c) remains. That category includes all acts or omissions knowingly and intentionally performed in a manner or for a purpose not in conformity with the applicable enabling statutes. Insofar as acts undertaken in bad faith or for a malicious purpose fall within the scope of employment of the acting employee for purposes of United States' liability under the Federal Tort Claims Act, those acts or omissions fall into category (2)(c). In addition, the category encompasses acts or omissions undertaken with good intent despite a knowing lack of conformity with the applicable federal laws. Plaintiff's theories set out in footnote 2, *supra*, include the latter type of good intentioned violation of the federal laws governing the operation of the Central Valley Project. Assuming that the acts or omissions were negligent and the cause of plaintiff's injury, the United States would be liable for damages to the extent the employees were acting within the scope of their employment, unless the bar of section 702c prohibits the imposition of liability. The court has found no decision even tangentially addressing the applicability of

section 702c's immunity to flood damages deriving from a facility authorized in whole or in part for flood control when the causally negligent operation of the facility was purposefully or knowingly not in conformity with the applicable enabling statutes.

Finding no precedent or legislative history to guide the resolution of this issue, the court must rely on the basic policy of section 702c's immunity and on fundamental concepts of fair play between the Government and its citizens. The first step in analysis is to understand exactly what type of activity is included within category (2)(c). By its very definition, the category describes acts and omissions that are neither directly nor indirectly in furtherance of any flood control purpose. While acts intended to restrain the flow of water to prevent downstream flooding would qualify as directly furthering a flood control purpose, section 702c is not limited to such direct flood control activity. As set forth in *Sanborn* and *Morici I*, the immunity also encompasses acts that are in furtherance of any of the authorized and intended purposes of a project created in part for flood control because such acts are indirectly related to and in furtherance of the flood control purpose. In addition, as delineated in the foregoing portion of this Opinion, the immunity also clothes the United States when the acts complained of constitute good faith efforts to conform to and further the flood control purpose or another of the authorized purposes of the multiple purpose project. One can accept the conclusion that the absolute immunity of section 702c is the *quid pro quo* for federal participation in the construction and operation of flood control projects and multiple purpose projects devoted in part to flood control. As a corollary, one can accept the tacit consequence of that conclusion, namely, that there will be instances in which citizens will be harmed by the negligence of the United States and will be denied a remedy therefor. Categories (2)(a) and (b) describe instances in which the existence of a wrong without a remedy does not seriously offend the sense of fair play and substantial justice embodied in the American system of law.

There is a major chasm between the acts included in categories (2)(a) and (b) and the acts described in category (2)(c). Although acting within the scope of their employment, the Government employees whose acts fall into category (2)(c) purposefully and knowingly acted outside the authority granted by Congress. It would stretch section 702c beyond the breaking point to apply its immunity to bar recovery of damages for injuries resulting from negligence or wrongful acts falling within category (2)(c). Nothing in the language of section 702c or the congressional policy decision that is inherent in the adoption of the section supports an expansion of the immunity to encompass circumstances in which the injury has been caused by purposeful and knowing operation of a flood control project in a manner or for a purpose not authorized in the governing law applicable to the project. Such an expansion of the immunity would leave landowners adjoining federal water projects, along with affected public generally, subject to the wholly uncontrolled whims of the federal employees operating the project.

An analogy may be drawn between the flood damages alleged in the amended complaint, namely, damages arising from acts or omissions within category (2)(c), and the flood damages at issue in *Peterson v. United States*, 367 F.2d 271 (9th Cir. 1966), and in *Graci v. United States*, 456 F.2d 20 (4th Cir. 1971). In *Peterson* and *Graci*, the immunity of section 702c was held to be inapplicable because the flood damages were "wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control." *Peterson v. United States, supra*, at 275. In those cases, the damages were factually unrelated to congressional flood control enactments. In the instant case, the damages are alleged to be legally unrelated to the federal statutes authorizing the operation of the Central Valley Project. In other words, although the damages are said to arise from the operation of facilities which are an integral part of the Central Valley Project, the causal operation of the Project is alleged to have

been legally unrelated to the purposes for which the Project is authorized and is intended to be operated.

Given the lack of legislative history and precedent, this court has taken particular care in considering the propriety of extending section 702c's immunity to encompass the acts described in category (2)(c). There is one possible justification for such an extension which should be mentioned, although the court finds it insufficient. It could be argued that even the acts described in category (2)(c) should fall under the immunity of section 702c because, absent the immunity, the United States will be required to defend on the merits many lawsuits wherein it would be determined after trial that the acts giving rise to the injury fall, in fact, into categories (1), (2)(a) or (2)(b). There is little question that the conclusion that section 702c does not apply to acts in category (2)(c) will result in complaints being drafted to allege that flood damages arose from *ultra vires* acts within category (2)(c) when the pleading requirements of Rule 11 of the Federal Rules of Civil Procedure permit counsel to do so. Such complaints would not be subject to dismissal for failure to state a claim for relief, and the United States will necessarily incur significantly greater litigation costs. To this degree, the policy inherent in section 702c that the United States should enjoy absolute immunity from suit for damages from or by floods or flood waters is compromised. Nevertheless, there must be some resolution of the tension between the immunity of section 702c and the policy of the Federal Tort Claims Act that the United States shall be liable for the negligent and wrongful acts of its employees. That tension cannot be resolved consistently with concepts of fair play and substantial justice through an extension of the immunity accorded by section 702c when Congress has not expressly spoken. On balance, the increased litigation costs to be incurred by the United States from a decision that section 702c does not apply in cases falling within category (2)(c) are not a sufficient justification for an expansion of section 702c to encompass circumstances in which Government employees have caused an injury through actions that are purposefully or knowingly taken in a manner or for a purpose not authorized by Congress.

For the reasons set forth above, this court must deny the United States' motion to dismiss the amended complaint insofar as that complaint alleges that plaintiff was injured by the acts of Government employees on an operational level which were knowingly undertaken in a manner or for a purpose not authorized in the federal statutes and regulations governing the operation of the Central Valley Project. It is ordered that the amended complaint is dismissed insofar as the injury of which plaintiff complains involved a policy making or planning decision within the discretionary function exception of 28 U.S.C. § 2680(a) or the act of a subordinate employee in furtherance of such a policy making or planning decision. Moreover, the amended complaint is dismissed insofar as the acts giving rise to the injury were undertaken in a good faith effort to conform to the governing statutes and regulations even though the acts failed to conform to the law through mistake or error of judgment or understanding. In other words, using the analytical categories set out in this Opinion, the amended complaint is dismissed insofar as the acts alleged fall within categories (1), (2)(a) or (2)(b), and the United States' motion to dismiss is denied insofar as the acts alleged fall within category (2)(c).

In view of the lack of precedent or other guidance for this decision, this court finds that the orders rendered herein and in *Morici I* granting and denying in part the United States' motions to dismiss "involve[ ] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order[s] may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Accordingly, the parties in this action may seek an interlocutory appeal to the Ninth Circuit within ten days from the entry of this Opinion, if they deem it appropriate to do so, pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.